**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**STATE OF TEXAS et al., and Dr. J. W.
Edgar, Commissioner of Education,
et al., Defendants-Appellants.**

**No. 71–1061.**

United States Court of Appeals,
Fifth Circuit.

July 9, 1971.

Crawford C. Martin, Atty. Gen. of Texas, James C. McCoy, Asst. Atty. Gen., Pat Bailey, Atty., Austin, Tex., for defendants-appellants.

Roby Hadden, U. S. Atty., Tyler, Tex., Brian K. Landsberg, Alexandra Polyzoides, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

BY THE COURT:

The Order of November 24, 1970,[1] is hereby affirmed. The Order of April 20, 1971,[2] is hereby affirmed except that the District Court shall modify said Order as follows:

1. With respect to School Transportation, paragraph C(3) shall provide that in no event shall this paragraph be construed as requiring any fixed percentage of students of a minority group on a particular route or run.

2. With respect to Extra-Curricular Activities, it shall be provided that any school district aggrieved by the proposed reduction or the reduction of Minimum

---

1. United States v. Texas, 321 F.Supp. 1043 (E.D.Tex.1970).

2. United States v. Texas, 330 F.Supp. 235, Part II (E.D.Tex.1970).

Foundation Program Funds, or the proposed suspension or the suspension of accreditation shall have the right to petition the United States District Court for the Eastern District of Texas, in which this suit is pending, for such relief as said Court may deem proper.

3. With respect to Faculty and Staff, it shall be provided that any school district aggrieved by the proposed termination or the termination of Minimum Foundation Funds or the proposed suspension or the suspension of accreditation shall have the right to petition the United States District Court for the Eastern District of Texas, in which this suit is pending, for such relief as said Court may deem proper.

4. Paragraph E(6) under Faculty and Staff shall be stricken with the provision that the Order shall not be construed to have any effect upon the state or federal remedies available to any individual members of Faculty or Staff for discriminatory action by a school district in assignment, demotion, dismissal, reassignment, payment or other employment conditions.

5. With respect to Student Assignment, paragraph F(1) shall be amended to add at the end of the sentence the words, "except where required to comply with constitutional standards."

6. It shall also be provided with respect to Student Assignment that if a school district which is reviewed pursuant to paragraph F(3) is the subject of a school desegregation suit or a court-approved plan of desegregation, a copy of the report required by paragraph F (3) shall be submitted to the District Court having jurisdiction of such suit or plan.

7. Because of the interdistrict operation of the Order in this case, this Court directs that the Order of April 20, 1971, shall include the following paragraph:

"Nothing herein shall be deemed to affect the jurisdiction of any other district court with respect to any presently pending or future school desegregation suits."

8. We direct that the Texas Education Agency file copies of this Order with every United States District Court in the State of Texas in which there is a school desegregation suit or court-approved plan in sufficient numbers to permit any such court to file a copy in each such cause. The Clerks of each such District Court are hereby directed to file said copies in each school desegregation cause pending in their District.

This case is remanded to the District Court with directions to re-enter the Order of April 20, 1971, as modified herein.

Affirmed in part; modified and remanded with directions.

## APPENDIX

## EXHIBIT "C"

Filed: Apr. 20, 1971

### ORDER

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS TYLER DIVISION

UNITED STATES OF AMERICA

CIVIL ACTION
No. 5281

versus

STATE OF TEXAS, ET AL.

On November 24, 1970, this Court entered an order in this case then styled United States of America v. State of Texas, et al., Civil Action No. 1424, Marshall Division, requiring *inter alia* that the Texas Education Agency, the State Commissioner of Education and their officers, agents, employees, successors re-evaluate all of their activities and practices relating to the desegregation of public elementary and secondary education within the State of Texas; upon completion of this re-evaluation the defendants were required to file a plan stating specific actions which they would take pursuant to their affirmative obligations under Title VI of the Civil

Rights Act of 1964 and the Fourteenth Amendment to the Constitution. On January 15, 1971, the defendants filed their plan. Plaintiffs filed a response to this plan on February 1, 1971, incorporating both objections to defendants' plan and recommendations for what the defendants were legally required to accomplish by this plan. An evidentiary hearing was held on February 1 and 2, 1971. A further hearing was held in Tyler on April 12, 1971, the case then, and hereafter, being styled Civil Action No. 5281, Tyler Division.

The Court has carefully considered the submissions of the respective parties and the evidence presented at the hearings, in light of the defendants' affirmative duty to take "whatever steps might be necessary to * * * [eliminate] racial discrimination * * * root and branch." Green v. County School Bd. of New Kent County, 391 U.S. 430, 437–438, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968), Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). In this regard the duty of the state appears to be two-fold: *First,* to act at once to eliminate by positive means all vestiges of the dual school structure throughout the state; and *second,* to compensate for the abiding scars of past discrimination.

Accordingly, it is hereby ORDERED that the State of Texas, Dr. J. W. Edgar, Commissioner of Education of the State of Texas, the Texas Education Agency, their officers, agents, employees, successors and all other persons in active concert or participation with them (hereinafter referred to as defendants), shall fulfill those duties as follows:

A. *Student Transfers*

(1) Defendants shall not permit, make arrangement for or give support of any kind to student transfers, between school districts, when the cumulative effect in either the sending or receiving school or school district will be to reduce or impede desegregation, or to reinforce, renew, or encourage the continuation of acts and practices resulting in discriminatory treatment of students on the ground of race, color, or national origin.

(2) The Texas Education Agency shall review all student transfers and shall notify the sending and receiving districts promptly of all transfers which do not appear to comply with the terms of this Order.

(3) If, after receiving notice of the Texas Education Agency's refusal to approve transfers, the receiving district shall continue to accept the transfer of students, or if the sending district shall refuse to provide suitable educational opportunities for these students, defendants, after 15 days notice to the President of the Board of Trustees and the Superintendent (if the district has such an official), shall refuse to transfer the funds, based on the average daily attendance of the transfer students involved to the account of the receiving district, and shall, thereby, terminate and refuse to grant or continue paying to the offending district a percentage of state funds equivalent to the district's entitlement based on the average daily attendance of the students transferring in violation of this Order.

(4) Defendants shall also refuse to distribute to the offending district any transportation funds which might accrue on account of transfer students accepted in violation of this Order. If the offending district continues to refuse to deny transfers which adversely affect desegregation, the Texas Education Agency shall warn the district that its accreditation status is in danger. This warning shall remain in effect for ten days, at which time, if the offending district has failed to correct its violations, the Texas Education Agency shall suspend the district's TEA accreditation.

B. *Changes in School District Boundaries*

(1) Defendants shall not permit, make arrangements for, approve, acquiesce in, or give support of any kind to changes in school district boundary lines —whether by detachment, annexation, or

consolidation of districts in whole or in part—which are designed to, or do in fact, create, maintain, reinforce, renew, or encourage a dual school system based on race, color, or national origin.

(2) Defendants shall require the board of trustees of any school district desiring to annex or consolidate with a nearby district, in whole or in part, or desiring to change its boundaries in any other manner such as is described, for example, in Part II–A(2) of the Court's Order of November 24, 1970, to report said intention to the Commissioner of Education for the State of Texas at least 15 days prior to the effective date of such action, and shall take appropriate measures to insure compliance with this requirement.

(3) Whenever the Commissioner shall receive notice that a district or a portion of a district is to be detached from, annexed to, or consolidated with another district, he shall institute an immediate investigation as to the effects of such projected change of boundaries on the desegregation status of all of the school districts concerned. He shall promptly notify the appropriate county and local officials of his findings, and indicate whether or not the transfer of territory is in violation of the law.

(4) If county and local officials proceed to consummate the transfer of territory after being notified that they are in violation of the law, defendants, after 15 days notice to the President of the Board of Trustees and the Superintendent of the district (if the district has such an official), shall refuse to transfer funds, based on the average daily attendance of the students in the territory detached, annexed or consolidated, to the account of the new district, and shall, thereby, terminate and refuse to grant or continue paying to the offending district a percentage of state funds equivalent to the district's entitlement based on the average daily attendance of the students detached, annexed or consolidated in violation of this Order. These funds shall be distributed to the remainder of the original district, in cases of illegal detachments, but shall not be used by that district to support the education of children living in the detached area. In cases involving the consolidation of whole districts, the Texas Education Agency shall hold the funds derived from the average daily attendance of the students illegally annexed to or consolidated with the new district in escrow pending dissolution of the illegal transfer of territory and the return of students to their original districts.

(5) Defendants are enjoined from granting "incentive aid" payments pursuant to Texas law (Art. 2815–4, Vernon's Ann. Texas Revised Civil Statutes as amended), to districts which are enlarged by annexations or consolidation actions in violation of this Order.

(6) Should a county board of education or a school district, having received notice from the Commissioner that a territorial alteration has been disapproved, fail to disavow the action and to declare its effects null and void, the Texas Education Agency shall notify the district that its accreditation status is in danger. This notice shall remain in effect for 10 days, at the end of which time, if the offending district has failed to correct its violations, the Agency shall suspend the district's TEA accreditation.

(7) In all cases involving annexation or consolidation of school districts, the Texas Education Agency shall apply the portions of the Order of the Court in this case dated April 19, 1971, concerning the annexation of nine all-black school districts to nearby bi-racial districts, and specifically, the portions of that Order relating to faculty and staff and to bi-racial committees, to the newly enlarged districts and shall require the said district to submit to the Texas Education Agency such reports as may be necessary to enable that Agency to determine whether the newly enlarged district is operating and will continue to operate in compliance with Title VI and the Fourteenth Amendment.

### C. *School Transportation*

(1) Defendants shall not permit, make arrangement for, acquiesce in, or give support of any kind to bus routes or runs which are designed to, or do in fact, create, maintain, reinforce, renew, or encourage a dual school system based on race, color, or national origin.

(2) The transportation system in those county units and school districts having transportation systems shall be completely re-examined each year by the Texas Education Agency. Bus routes and runs as well as the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis. Bus routes and runs shall be constituted to provide that each bus operated by a district picks up every pupil along the route or run who is assigned to the school or schools and grade levels served by that bus. Where two or more equally efficient and economical routes or runs are available in a given area of the school district, the route or run which would promote or facilitate desegregation of buses shall be adopted by the district and approved by the Texas Education Agency rather than a route or run which, whether by intent, inaction, or inadvertence, would maintain or encourage segregation.

(3) Accordingly, if upon examination of transportation systems, the Texas Education Agency shall find that a district is operating one or more bus routes or runs which serve 66% or more students of a minority group, which are duplicated by one or more routes or runs serving more than 66% students of another race or ethnic background, the Texas Education Agency shall immediately investigate and determine whether the heavily minority routes or runs may be re-routed, terminated or combined with routes or runs which serve non-minority students so as to desegregate these routes or runs.

(4) If the Texas Education Agency finds that a county or local district is operating its transportation system in violation of this Order, it shall notify the appropriate officials of the local district. If the offending district refuses to alter its bus routes or runs so as to avoid segregation in instances where the Texas Education Agency has determined that such alterations are necessary, or if such a district persists in operating bus routes or runs which adversely affect the desegregation of its schools, classes, or extra-curricular activities, the Texas Education Agency shall refuse to approve the entire route structure of the district, and shall, thereby, terminate and refuse to grant or continue paying state transportation funds to the offending district until it shall have altered all routes or runs operated in violation of this Order, so as to eliminate all vestiges of discrimination based on race, color, or national origin. In addition, the Texas Education Agency shall notify the district that its accreditation status is in danger. This notice shall remain in effect for 10 days, at which time, if the offending district has failed to correct its violations, the Agency shall suspend the district's TEA accreditation.

### D. *Extra-Curricular Activities*

(1) Defendants shall not permit, make arrangement for, acquiesce in or give support of any kind to activities run in connection with the elementary and secondary educational program operated by the state or any of its county and local educational agencies which, whether by intent, inaction, or inadvertence, results in segregation or other discrimination against students on the ground of race, color, or national origin. These extra-curricular activities include, but are not limited to, student government organizations, athletic teams for inter-scholastic competition, clubs, hobby groups, student newspaper staffs, annual staffs, band, band majorettes and cheerleaders.

(2) The Texas Education Agency shall instruct the members of its accreditation review teams in conjunction with its Title IV staff, to examine the extra-curricular activities of each district which they review. All violations

of this Order which are discovered by such investigations shall be reported to the Commissioner of Education. If the Texas Education Agency receives complaints from any source that a school district is operating and supporting extra-curricular activities in violation of this Order, immediate investigation shall be made of such complaint.

(3) If the Commissioner finds that a district is operating and supporting extra-curricular activities in violation of this Order, he shall notify the county or local school district through the President of its Board of Trustees and through the Superintendent (if the district has such an official), that the district is operating in violation of Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment. At the same time, he shall warn the district that its accreditation is in danger. This warning shall remain in effect for 10 days, at which time, if the district has failed to correct the violations, the Texas Education Agency shall suspend the district's TEA accreditation.

(4) In addition to the suspension of the accreditation of districts operating discriminatory extra-curricular activities, the State of Texas and the Texas Education Agency shall reduce the percentage of state funds granted to the district under the Minimum Foundation Program for salaries and operating expenses by ten per cent. Should the district persist in operating its extra-curricular activities in a manner which results in segregation or discriminatory treatment of students on account of race, color, or national origin, the State of Texas and the Texas Education Agency shall reduce the percentage of state funds as described above by an additional ten per cent. for each semester or term that the violations continue.

(5) Defendants are required to consider that a suspension or reduction of programs and activities to avoid operating them on a desegregated basis constitutes a violation of Title VI and the Fourteenth Amendment.

E. *Faculty and Staff*

(1) Defendants shall not permit, make arrangement for, acquiesce in or give support of any kind to the hiring, assigning, promoting, paying, demoting, reassigning or dismissing, or treatment of faculty and staff members who work directly with children in a discriminatory manner on account of race, color, or national origin. Defendants shall be responsible for the application and enforcement throughout the State of the provisions of the Order of the Court in this case dated April 19, 1971, referred to in Section 3, paragraph 7 herein, and specifically, the portions of that Order relating to the treatment of faculty and staff.

(2) In carrying out its affirmative duties under Title VI and the Fourteenth Amendment in this area, the Texas Education Agency shall require each county or local educational agency desiring to receive state funds under the Minimum Foundation Program to include with its preliminary application for such funds a list of objective, non-racial and non-ethnic criteria by which the county or local district will measure its faculty and staff for assignment, promotion, demotion, reassignment or dismissal and by which it will judge prospective employees for faculty and staff positions.

(3) The Texas Education Agency shall require the members of its accreditation review teams, in conjunction with the members of its staff designated to work in collaboration with the United States Office of Education to provide technical assistance to desegregating school districts pursuant to Title IV of the Civil Rights Act of 1964 (hereinafter referred to as "Title IV staff" or "Title IV personnel"), to examine the faculty and staff hiring and assigning practices of the districts which they visit for accreditation purposes, and to examine the records relating to hiring, assigning, promoting, paying, demoting, reassigning or dismissing of faculty and staff who work directly with children

for a period including the three years prior to the complete elimination of the district's dual school structure. The review teams and state Title IV personnel shall also examine faculty assignments within each school district under review to determine whether the percentage of minority teachers in each school is substantially the same as the percentage of minority teachers in the school district as a whole, as required under Part II, Section A of the Order of this Court dated April 19, 1971, and referred to in Sections B(7) and E(1) herein. Any evidence of discriminatory practices concerning faculty and staff shall be reported to the Commissioner of Education.

(4) After such further investigation as deemed necessary by the Commissioner, he shall notify the district through the President of its Board of Trustees and its Superintendent (if the district has such an official), of any acts and practices with regard to faculty and staff which violate the areas described in Part II, Section A, of the Order of this Court, dated April 19, 1971, referred to in Sections B(7), E(1) and E(3) herein. At the same time, he shall warn the district that its accreditation is in danger. This warning shall remain in effect for 15 days, at which time, if the offending district fails to correct its violations with regard to faculty and staff who work directly with children, the Texas Education Agency shall suspend the district's TEA accreditation.

(5) In addition to the suspension of accreditation, the State of Texas and the Texas Education Agency shall refuse to approve the district's application for state funds under the Minimum Foundation Program for salaries, and shall, thereby, terminate and refuse to grant or continue paying such funds to the district.

(6) Defendants shall require a school district which has been found to have engaged in discriminatory practices in regard to the assignment, demotion, dismissal, reassignment or payment of faculty or staff to restore or offer to restore the faculty or staff member to his (or her) original position held prior to the discriminatory action and to pay the faculty member for any time he (or she) was unemployed or employed at a lower salary level because of the discriminatory action of the district, and for which he (or she) was not adequately compensated.

F. *Student Assignment*

(1) Defendants shall not permit, make arrangement for, acquiesce in or give support of any kind to the assignment of students to schools, individual classrooms or activities on the basis of race, color or national origin.

(2) Defendants, having identified pursuant to this Court's Order of November 24, 1970, school districts whose enrollment of minority race children is greater than 66% and whose total student population is fewer than 250 students, shall show cause by August 15, 1971, why each such school district should not be annexed to or consolidated with one or more independent school districts of over 150 students, or one or more common school districts of over 400 students, so as to eliminate its existence as a racially or ethnically separate educational unit.

(3) Defendants shall review each year all school districts in the state in which there exist schools enrolling more than 66% minority group students, as reported in accordance with Part II(E) (6) of the Court's Order in this case dated November 24, 1970, and shall make findings as to whether or not the student assignment plans of these districts have resulted in compliance with federal constitutional standards. On October 1, 1971, and on the same date each subsequent year until further order of this Court, defendants shall file a report with the Court indicating (1) the school districts reviewed and the particular findings concerning the assignment and transfer of students within each such district; (2) what steps each district is taking to eliminate their racially and ethnically identifiable

schools and what recommendations defendants have proposed in this regard; and (3) what special cultural and educational activities these districts have instituted to compensate for the inherently unequal educational opportunities provided to students in these racially or ethnically identifiable schools. Copies of this report shall be served upon the Civil Rights Division of the United States Department of Justice and the Office for Civil Rights of the United States Department of Health, Education and Welfare. A copy of this report shall also be retained in the Offices of the Texas Education Agency in such a manner that it will be readily and conveniently available for public inspection during normal business hours.

### G. Curriculum and Compensatory Education

(1) Defendants shall insure that school districts are providing equal educational opportunities in all schools. The Texas Education Agency, through its consulting facilities and personnel, shall assist school districts in achieving a comprehensive balance curriculum on all school campuses, and, where necessary, in providing for students to transfer to different schools in the district on a part-time basis to avail themselves of subjects not offered in their assigned school. Full time transfers may be allowed only where they do not adversely affect desegregation as further described in Section A herein.

(2) The Texas Education Agency shall institute a study of the educational needs of minority children in order to insure equal educational opportunities of all students. The Texas Education Agency shall request the assistance of the United States Office of Education and any other educational experts whom they choose to consult in making this study. By not later than August 15, 1971, a report on this study shall be filed by the Texas Education Agency with the Court including:

(a) Recommendations of specific curricular offerings and programs which will insure equal educational opportunities for all students regardless of race, color or national origin. These curricular offerings and programs shall include specific educational programs designed to compensate minority group children for unequal educational opportunities resulting from past or present racial and ethnic isolation, as well as programs and curriculum designed to meet the special educational needs of students whose primary language is other than English;

(b) Explanation of presently existing programs funded by the State of Texas or by the Federal Government which are available to local districts to meet these special educational needs and how such programs might be applied to these educational needs;

(c) Explanation of specific standards by which the defendants will determine when a local district, which has racially or ethnically isolated schools or which has students whose primary language is other than English, shall be required by the defendants to participate in the special compensatory educational programs available; and

(d) Explanation of procedures for applying these standards to local districts including appropriate sanctions to be employed by the defendants should a district refuse to participate in special compensatory educational programs where it has been instructed to do so pursuant to application of the standards developed under subsection (c) above.

(e) Copies of this report shall be served as described in Section F above, and a copy shall also be retained in the Offices of the Texas Education Agency as described therein.

### H. Complaints and Grievances

The defendants shall send to all county and local educational agencies an information bulletin designed to notify faculty, staff and patrons of local school districts of the availability of complaint and grievance procedures and to inform them of how to utilize these procedures. Defendants shall further require that every county and local educational agency shall place this bulletin on public display in such a way as to assure its

availability at all times during school hours. A copy of this bulletin shall be filed with the Court on or before August 15, 1971, with a copy to the plaintiff.

## I. *Notification*

The defendants, in all cases where notification is given to a school district of imminent loss of accreditation or state funds because of its failure to meet the requirements of Title VI, Civil Rights Act of 1964 and the Fourteenth Amendment, shall, at the same time, notify the plaintiff. In the event that it becomes necessary to suspend the district's accreditation or to reduce or remove state funds the defendants shall also notify the plaintiff.

## J. *Jurisdiction*

This Court retains jurisdiction of this matter for all purposes, and especially for the purpose of entering any and all further orders which may become necessary to enforce or modify this decree.

SIGNED and ENTERED this 20th day of April, 1971.

(Signed) WM. WAYNE JUSTICE
UNITED STATES
DISTRICT JUDGE