404 U.S. 1201
 92 S.Ct. 1
 30 L.Ed.2d 5
 Joan S. MAHAN et al.
v.
 Henry E. HOWELL, Jr., et al. Edgar A. PRICHARD et al. v. Clive L. DuVAL, II, et al. Edgar A. PRICHARD et al. v. Stanford E. PARRIS et al. July 27, 1971. djQ Mr. Justice BLACK, Acting Circuit Justice. These cases, presented to The Chief Justice and assigned to me for action in his absence, challenge the judgment of a federal three-judge court holding unconstitutional in part an Act of the General Assembly of the State of Virginia providing for reapportionment of its State Senate and House of Delegates. The cases were filed in different three-judge district courts and were consolidated for trial in the District Court for the Eastern District of Virginia. In an opinion written by Circuit Judge Bryan, 330 F.Supp. 1138, the consolidated court held parts of the legislative Act unconstitutional and invalid and proceeded to write a reapportionment measure changing the boundaries of approximately half of the House districts and staying the effectiveness of the Act insofar as the court's opinion had altered it. As written by the
 
 [1202]
 court the redistricting order decreases representational disparity between the several House districts from 16.4% to 7.2%. In its consideration of the General Assembly's Senate districting formula, the court found it necessary to effect only one change to make allowances for the residences of naval personnel stationed in the Norfolk-Virginia Beach area. The motion here is for a stay of the district court's order pending appeal. In considering questions of this kind an individual Member of the Court to whom the matter is presented should give due consideration to the fact that the four district judges' order was substantially unanimous[1] and that the two judges who were subsequently requested to stay their order refused to do so. A single Justice, of course, must also weigh the substantiality of the questions presented in light of this Court's prior decisions. E.g., Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969); Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969). Moreover, it is settled that unless a judge considering the application believes it reasonably probable that four Members of the Court will vote to hear such an appeal the requested stay should not be granted.[2] Here, therefore, the basic thing for me to consider is whether four Members of the Court are likely to vote in favor of granting this appeal when the matter is given consideration. On due consideration, I am unable to say that four ----------[1].Judge Lewis filed a separate concurring and dissenting opinion. He fully agreed with all aspects of the ruling with the exception of the court's refusal to create a 10-member multi-member district in Fairfax County.[2] Board of School Comm'rs of Mobile County v. Davis, 84 S.Ct. 10, 11 L.Ed.2d 26 (1963); Organized Village of Kake v. Egan, 80 S.Ct. 33, 4 L.Ed.2d 34 (1959); Edwards v. New York, 76 S.Ct. 1058, 1 L.Ed.2d 17 (1956).
 [1203]
 Members would so vote. The case is difficult; the facts are complicated; the four district court judges deciding the case had no difficulty in reaching their conclusion on the constitutional questions or in devising a plan to correct the deficiencies they found; the delay incident to review might further postpone important elections to be held in the State of Virginia should the stay be granted. These and other considerations which need not be stated lead me to believe that four Members of the Court are not likely to grant an appeal and therefore I decline to enter an order which would in effect stay the judgment of the consolidated three-judge court. Motion denied. N. L. R. B. v. Getman [92SCt7,404US1204,30LEd2d8] 92 S.Ct. 7 404 U.S. 1204 30 L.Ed.2d 8 NATIONAL LABOR RELATIONS BOARD v. Julius G. GETMAN and Stephen B. Goldberg. July 27, 1971. djQ Mr. Justice BLACK, Acting Circuit Justice. Respondents, two law professors who are undertaking a study of labor representation elections, applied for and obtained an order from the United States District Court for the District of Columbia requiring the National Labor Relations Board to provide respondents 'with names and addresses of employees eligible to vote in approximately 35 elections to be designated by (respondents).' Respondents base their claim to the information on the language of the Freedom of Information Act, 5 U.S.C. § 552(a)(3), which requires that a government agency 'on request for identifiable records * * * shall make the records promptly available to any person.' The Government has filed an application seeking a stay of the order of the district court. This application was assigned to me in the absence of THE CHIEF JUSTICE. The Government applies for a stay on the ground that the district court order requiring the Board to comply with the Freedom of Information Act and deliver the records in question to respondents would interfere with the representation election procedures under the National Labor Relations Act, 49 Stat. 449, as amended. The Board was created by Congress and Congress has
 [1205]
 seen fit to make identifiable records of the Board and other government agencies available to any person upon proper request. I find no exception in the Freedom of Information Act which would authorize the Board to refuse promptly to turn over the requested records. I deny the application for stay without prejudice to the Government to present its application to another Member of this Court. Application denied. It is so ordered. U. S. v. Edgar [92SCt8,404US1206,30LEd2d10] 92 S.Ct. 8 404 U.S. 1206 30 L.Ed.2d 10 UNITED STATES v. Dr. J. W. EDGAR, Commissioner of Education, and the Texas Education Agency. July 29, 1971. djQ Mr. Justice BLACK, Circuit Justice. The Commissioner of Education of the State of Texas and the Texas Education Agency make application for a stay of the judgment of the United States Court of Appeals for the Fifth Circuit, 447 F.2d 441, affirming the order of the United States District Court for the Eastern District of Texas, 321 F.Supp. 1043, which directed the applicants to take certain affirmative action to eliminate all vestiges of discrimination from the public schools within the State. The State of Texas provides for the supervision of state education and the distribution of state educational funds through the Texas Education Agency under the direction of the Commissioner of Education. The United States brought this action against applicants on March 6, 1970, to enforce Title VI of the Civil Rights Act of 1964, 78 Stat. 252, 42 U.S.C. § 2000d et seq., and the Fourteenth Amendment of the United States Constitution. The District Court, on April 20, 1971, issued its order directing the Commissioner and the Texas Education Agency to take certain specified steps to withhold funds and accreditation from school districts which failed to
 [1207]
 meet their constitutional obligation to eliminate remaining vestiges of the dual school system. The District Court order dealt with the areas of student transfers, changes in school district boundaries, school transportation, extracurricular activities, faculty and staff practices, student assignment, curricula and compensatory education. The United States Court of Appeals for the Fifth Circuit, with certain minor alterations, unanimously affirmed the order of the District Court. The Commissioner and the Texas Education Agency then applied to the Fifth Circuit for a stay of its order pending action by this Court on the applicants' petition for certiorari yet to be filed. The circuit court refused the stay. The application for stay has now been presented to me as the Circuit Justice for the Fifth Circuit. It would be very difficult for me to suspend the order of the District Court that, in my view, does no more than endeavor to realize the directive of the Fourteenth Amendment and the decisions of this Court that racial discrimination in the public schools must be eliminated root and branch. Green v. County School Board of New Kent County, 391 U.S. 430, 437—438, 88 S.Ct. 1689, 1693—1694, 20 L.Ed.2d 716, 723—724 (1968); see Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); United States v. Montgomery County Board of Education, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263 (1969). I cannot say that four Members of this Court are likely to vote to hear this case and undo what has been ordered by the District Court and Court of Appeals below. My views need not be expressed at length. The question of granting certiorari will have to be decided by this Court when the petition properly reaches us. For me, as one Member of this Court, to grant a stay now would mean inordinate delay and would unjustifiably further postpone the termination of the dual school system that the order below was intended to accomplish. The Dis-
 [1208]
 trict Court's opinion and order are comprehensive and well reasoned. In my judgment the facts found by the District Court, which do not appear to be materially disputed by the applicants, fully justify the order. Under these circumstances I deny the stay and let the matter await final decision before the full Court when the petition for certiorari is properly presented for consideration. The stay is denied. It is so ordered. Stay denied. Russo v. U. S. [92SCt4,404US1209,30LEd2d13] 92 S.Ct. 4 404 U.S. 1209 30 L.Ed.2d 13 Anthony RUSSO, Jr. v. UNITED STATES.
 No. A—159.
 Aug. 16, 1971.
 Mr. Justice DOUGLAS, Circuit Justice.
 Applicant has been sentenced in a civil contempt proceeding for refusal to answer questions before a grand jury. Judge Barnes of the Court of Appeals for the Ninth Circuit issued a stay until August 9, 1971, to permit an application for a further stay to this Court. Mr. Justice Black continued the stay until August 16, 1971, so that I would have time to consider the matter at my home in Goose Prairie, Washington.
 I have gone over the application and the opposition filed by the United States, and I deny the stay.
 The principal question sought to be raised concerns the standing of grand jury witnesses, under the Omnibus Crime Control and Safe Streets Act of 1968, to raise the question whether the appearance and examination of a witness before a grand jury resulted from illegal electronic surveillance.*
 The question is an important one on which there seems to be conflict among the Circuits. Compare In re Evans, (D.C. Cir. 1971), 452 F.2d 1239, and In re Egan, 450 F.2d 199 (CA3) (both holding that a grand jury witness has standing to object to illegal wiretaps), with Bacon v. United States, 446 F.2d 667 (CA9) and United States v. Parnas, 443 F.2d 837 (CA9) (to the contrary). But in this case, the United States represented to the District Court that 'no wiretaps of any kind were used in this case.' Applicant, so far as I can ascertain, did not present any evidence of or indicate probable cause for believing (or even suspecting) that his wires had been tapped or that wires of others had been tapped with the result that his privacy had been implicated. There must be some credible evidence that the prosecution violated the law before ponderous judicial machinery is invoked to delay grand jury proceedings.
 
 
 1
 Denied.
 
 
 2
 It is so ordered.
 
 
 3
 Stay denied.
 
 
 
 *
 Title 18 U.S.C. § 2515:
 'Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.'
 Title 18 U.S.C. § 2518(10)(a) provides, in part:
 'Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
 '(i) the communication was unlawfully intercepted;
 '(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
 '(iii) the interception was not made in conformity with the order of authorization or approval.'