FORT BEND INDEPENDENT SCHOOL DISTRICT et al., Plaintiffs-Appellees,

v.

CITY OF STAFFORD et al., Defendants-Appellants.

No. 78–2346.

United States Court of Appeals, Fifth Circuit.

April 26, 1979.

Rehearing and Rehearing En Banc Denied May 31, 1979.

William A. Olson, Houston, Tex., for defendants-appellants.

Reynolds, Allen & Cook, Michael K. Swan, Houston, Tex., for Fort Bend Independent School Dist. & John Duncum.

Hoover, Cox & Miller, Dermot Rigg, Houston, Tex., for Michael McKenzie, Don H. Keasler, Steven C. Keasler, Don McGinity, Willie Walker.

Before AINSWORTH, GODBOLD, and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

The town of Stafford, Texas, historically a part of the Fort Bend Independent School District (FBISD) determined to break away and form its own school district. The district court enjoined the breakaway. We reverse and remand.

The parties agree that Stafford complied with all relevant state requirements for establishing a school district. Also, Stafford notified the Commissioner of Education of the State of Texas that it intended to form its own district. Pursuant to the mandate in *U. S. v. State of Texas,* 447 F.2d 441 (CA5, 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972), the Commissioner investigated the effects of the split-off in both Stafford and FBISD and concluded that creation of the new district would not violate the *State of Texas* mandate. FBISD attempted to appeal the Commissioner's decision to the State Board of Education, but the Board concluded that it had no jurisdiction. FBISD then brought the present action against Stafford claiming that, in violation of the Fourteenth Amendment, the breakaway plan would impede its efforts to desegregate.[1]

■ Creation of a separate school district which will impede the dismantling of a segregated system operating under court order will be enjoined. *Wright v. Council of the City of Emporia,* 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972). In *U. S. v. Scotland Neck City Board of Education,* 407 U.S. 484, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972), decided the same day, creation of a new school district was enjoined although the "parent" system was not operating under court order. The parent was, however, "then in the process of dismantling a dual school system," *Id.* at 485, 92 S.Ct. at 2215, 33 L.Ed.2d at 78. The new Scotland Neck district was legislatively authorized in March 1969, approved by the voters in April 1969, and was proposed to begin operating in the fall of 1969. Since 1968 the parent system had been in negotiation with the Justice Department, and an agreement had been reached that would desegregate the parent system by the opening of the school year in the fall of 1969. Creation of the new district impeded the plan in progress.

■ Creation of a new district is not a constitutional violation, however, merely

1. In this action FBISD also purported to appeal to the federal district court the Commissioner's approval of the breakaway plan, claiming that the Commissioner's actions violated the *State of Texas* mandate. The Commissioner, however, was never made a party to this case. Accordingly, pretermitting whether the Commissioner's actions could be questioned in the Southern District of Texas, *Gregory-Portland Indep. Sch. Dist. v. Texas Ed. Ag'cy,* 576 F.2d 81 (CA5, 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 1423, 59 L.Ed.2d 634 (1979), the issue of the Commissioner's compliance with the *State of Texas* mandate was not properly before the district court.

because at some time in the past the parent district engaged in discrimination. Once a district achieves unitary status, the methods, means and procedures employed to reach that status are not frozen and unchangeable, immunized from the consequences of subsequent racially neutral attempts to alter or divide the district.

The parties agree that prior to 1965 FBISD was a segregated system and that since 1965 it has been operating under a desegregation plan submitted to and approved by HEW. Its last all-black school was closed in 1969.[2]

■ FBISD has never been subject to court-ordered desegregation. The present suit is its first. The district court considered, however, that the split-off of Stafford could be a constitutional violation even though, FBISD, the parent district, was not under a court-ordered desegregation plan. It held:

> The fact of FBISD's voluntary participation in the dismantling of its dual school system in no way diminishes FBISD's constitutional obligation to do so, as mandated by the Supreme Court in *Brown v. Board of Education,* 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873] (1954). The Court in *Green v. School Board of New Kent County,* 391 U.S. 430 [88 S.Ct. 1689, 20 L.Ed.2d 716] (1968), charged "[s]chool boards . . . then operating state-compelled dual systems . . with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." The Board of Trustees of

FBISD is clearly so charged. In *U. S. v. Scotland Neck City Board of Education et al.,* 407 U.S. 484 [92 S.Ct. 2214, 33 L.Ed.2d 75] (1972) decided the same day as *Emporia,* Halifax County was not under a court-ordered desegregation plan. There the "parent" school district had entered into an agreement with the United States Department of Justice to implement a plan designed to dismantle its dual school system. Though the context of *Emporia* and many other cases is that the "parent" district was under a court-ordered desegregation plan, there is no language in those opinions which limits this court from deciding the issue because FBISD chose to voluntarily comply with the law. Any assertion by Stafford that the posture of this case is altered by that fact is without merit.

449 F.Supp. at 381.

The foregoing conclusion by the district court would be correct if the Fort Bend system has never attained unitary status. The court found:

> Implementation of the Stafford Municipal School District will interfere with an [sic] impede Fort Bend Independent School District's *efforts to achieve and maintain* a unitary school system. (Emphasis added)

*Id.* at 380.

\*　　\*　　\*　　\*　　\*　　\*

The thrust of this court's inquiry, however, is . . . what the impact of SMSD will have on the goal of equal education for all students, a goal which

---

2. As of October 1977 FBISD's student population was:

| Anglo | 9,926 | 67.9% |
|---|---|---|
| Mexican-American | 2,731 | 18.7% |
| Black | 1,773 * | 12.1% |
| Other | 191 | 1.3% |
| | 14,621 | |

\* As reported in the Federal Supplement the number of Black students is listed as 1,733. *Fort Bend Ind. Sch. Dist. v. City of Stafford,* 449 F.Supp. 375, 380 (S.D.Tex.1978). The record shows that the correct number is 1,773.

From this population, the students who would fall into the new Stafford district were:

| Anglo | 571 | 61.8% |
|---|---|---|
| Mexican-American | 326 | 35.3% |
| Black | 24 | 2.6% |
| Other | 3 | .3% |
| | 924 | |

The court found that withdrawal of the Stafford students would not substantially alter the racial composition of the Fort Bend system. *Id.* at 381.

FBISD *is in the continual process of achieving.* (Emphasis added.)

*Id.* at 379.

\* \* \* \* \* \*

Stafford's withdrawal from FBISD will severely disrupt *the progress FBISD has made* in dismantling and removing the effects of a dual system. (Emphasis added.)

*Id.* at 382.

These statements imply that the process of desegregating the system has not been completed. However, the court made no express findings that constitutional violations remain uncorrected, and the parties are not able to point out to us hard evidence that would justify our making such a finding at the appellate level. The court did not find that the efforts of Stafford to create a new district are racially motivated, and the parties concede that there is no such motivation. The court found that in several ways the withdrawal of Stafford will have an erosive effect upon steps FBISD has taken pursuant to the plan approved by HEW in 1965. As the district court succinctly put it, FBISD asserts that the new district "will have a negative effect on the continued implementation of its desegregation plan." *Id.* at 377. The court found there would be fewer black students in each grade in Stafford than there are in FBISD, and that without Stafford "the ability of FBISD to continue to zone minority students into each neighborhood school will be substantially restricted." *Id.* at 380. It found that the enrichment program begun by FBISD would lose funds and that fewer minority students would participate. The court also found that the operation of Stafford would obstruct the implementation by FBISD of planned construction, site selection (particularly the placement of schools between racially identifiable neighborhoods), and attendance zones and would "restrict FBISD's future implementation of its desegregation plan." *Id.* at 382. Finally, it concluded that the quality of education presently offered by FBISD would be diminished in both districts if Stafford is permitted to split off and that creation of Stafford would encourage other areas to form new districts. *Id.* at 382–84.

Other findings tend to imply that the system is unitary. The court found that FBISD has operated under the desegregation plan since 1965 without substantial modification; it has redrawn its attendance zones for elementary schools each year that a new school has been added; school sites are selected under a Board policy of having neighborhood schools and an ethnic balance in accord with the district-wide balance; the Board is making a good faith effort to avoid placing schools in the middle of one-race subdivisions; a substantial part of minority students participate in enrichment courses. Also, the court said: "In effectuating the Supreme Court's charge to eliminate racial discrimination 'root and branch', FBISD using all its resources undertook a complete program of education to meet the needs of all its students." *Id.* at 383. In one of its findings the court referred to FBISD's "former dual system." *Id.* at 384.

There is no court order or pending suit that will be interfered with by creation of Stafford. We cannot tell whether as a result of the plan approved by HEW in 1965 the dual Fort Bend system has been eliminated and the system is now unitary. Stafford, emphasizing the words italicized by us in the findings quoted above, vigorously insists that the Fort Bend system has been unitary for more than 10 years. FBISD, while reluctant to acknowledge the present existence of specific unconstitutional deficiencies, insists with equal vigor that, since the court found it is engaged in ongoing programs and means commenced pursuant to the 1965 desegregation plan, the court either expressly or impliedly held it is not unitary. Neither assertion is acceptable. Rather, from the appellate view, it appears that the district court walked a narrow line between deciding whether unitary status has or has not been attained.

For the foregoing reasons the judgment of the district court must be reversed and the cause remanded for such further proceedings.

REVERSED and REMANDED.