

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 15, 1993

Honorable William R. Ratliff
Chair
Education Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-256

Re: Whether an independent school district may provide free office space and other items to a private, non-profit foundation (RQ-538)

Dear Senator Ratliff:

On behalf of an independent school district (which you refer to as "the ISD"), you ask whether an independent school district may provide free office space and other items to a private, non-profit foundation. By way of background, you provide the following information:

> Members of the ISD's board of trustees set up a private, non-profit, tax-exempt education foundation corporation for the purpose of the financial support of the ISD and its students. The corporation's board of directors are the members who served on the ISD's board of trustees at the time the corporation was founded. The ISD allows the corporation to use an office in the ISD and provides incidental items such as phones, copy machines, and electricity. The corporation reimburses the ISD for such items as long-distance phone calls and copy paper.

We assume that the independent school district trustees do not receive compensation or any other remuneration for serving on the board of directors of the foundation.

First, you ask if "an ISD's provision of a free office and incidental items violate[s] any state or federal statutes." We are not aware of any state or federal statute which would prohibit an independent school district from providing free office space and office services to a foundation such as the one you describe.[1] Generally, the trustees of an independent school district "have the exclusive power to manage and govern the public free schools of the district." Educ. Code § 23.26. Article III, section 52(a) of the Texas Constitution, however, generally prohibits independent school districts from "grant[ing] public money or thing of value, in aid of, or to" a person or corporation, such as the foundation you describe.

---

[1]We do not consider whether the legality of relationship you describe is affected by the very recently enacted school finance reforms. See Acts 1993, 73d Leg., ch. 347.

In Attorney General Opinion MW-373 (1981), this office considered the relationship between the University of Texas and the University of Texas Law School Foundation, "a nonprofit corporation with the purpose of supporting the educational undertaking of the School of Law of the University of Texas." Attorney General Opinion MW-373 at 1. The memorandum of understanding between the foundation and the university stated, in part, that the law school would provide the foundation with office space, utilities, and telephone service. *Id.* at 5. This office concluded that the university had the statutory authority to provide the foundation with these items as "terms and conditions" attached to its donations under section 65.31(e) of the Education Code which provides as follows:

> The board is specifically authorized, upon terms and conditions acceptable to it, to accept and administer gifts, grants, or donations of any kind, from any source, for the use by the system or any of the component institutions of the system.

*Id.* at 2 (quoting Educ. Code § 65.31(e)); *see also id.* at 5-6.

This office then considered whether the terms of the memorandum of understanding would violate article III, section 51, the legislative counterpart of section 52(a). *See id.* at 8-11. The opinion stated that the constitutional prohibition

> requires that a grant by the university to the foundation must serve a public purpose, appropriate to the function of a university, and that adequate consideration must flow to the public. . . . In addition, the university must maintain some controls over the foundation's activities, to ensure that the public purpose is actually achieved. . . . If these conditions are met, the grant by the public entity is not unconstitutional.

*Id.* at 9.

As noted above, section 23.26 of the Education Code vests the trustees of an independent school district with "the exclusive power to manage and govern the public free schools of the district." Educ. Code § 23.26(b). The trustees of an independent school district are authorized to "receive bequests and donations or other moneys or funds coming legally into their hands." *Id.* § 23.26(a); *see also id.* §§ 20.482 (authorizing board of trustees to invest gifts made to school district to provide college scholarships), 21.903 (authorizing board of trustees to accept bequests for the benefit of the public schools and providing that funds may be expended by trustees "for any purpose designated by the donor so long as that purpose is in keeping with the lawful purposes of the schools for the benefit of which the donation was made"); Tex. Educ. Agency, 19 T.A.C. § 61.192 ("[d]onations to a school district shall be used in compliance with statutory provisions. Donations shall not be used as a substitute for adequate financial support as defined in § 61.191 of this title (relating to Fiscal Responsibility)"). In addition, "[a]ll rights and titles to the school property of the district, whether real or personal, shall be vested in the

trustees." Educ. Code § 23.26(c). Trustees hold school district property in trust for school purposes. *Texas Antiquities Comm. v. Dallas County Community College Dist.*, 554 S.W.2d 924 (Tex. 1977); *Love v. City of Dallas*, 40 S.W.2d 20 (Tex. 1931); Attorney General Opinion JM-958 (1988). Thus, the use of school property must serve a school purpose.

We believe that section 23.26 of the Education Code authorizes the trustees of an independent school district to accept donations and other gifts from a private foundation, and to supply the foundation with office space and the use of other school property, assuming a school purpose is served. The question whether the constitution permits the trustees to supply the foundation with office space and the use of other school property is another matter. We have not been provided with sufficient facts to determine whether this would serve a public purpose, appropriate to the function of an independent school district; whether adequate consideration would flow to the public; or whether the trustees would maintain sufficient controls over the foundation's activities, to ensure that the public purpose is actually achieved. This determination is one to be made by the board of trustees in the first instance. *See* Attorney General Opinion MW-373 at 9.

Next, you ask if "members of the ISD's board of trustees [can] also be members of the corporation's board." As noted above, we assume that the independent school district trustees do not receive compensation or any other remuneration for serving on the board of directors of the foundation. Conflicts of interest on the part of local public officials are regulated by chapter 171 of the Local Government Code, which preempts common-law conflicts of interests as applied to local public officials. *See* Local Gov't Code § 171.007(a). This chapter applies to trustees of independent school districts, *see id.* § 171.001(1), and generally requires an official who has a "substantial interest in a business entity," *see id.* § 171.002, to disclose that interest and to refrain from participating in actions involving the entity, *see id.* § 171.004. Section 171.009 provides as follows:

> It shall be lawful for a local public official to serve as a member
> of the board of directors of private, nonprofit corporations when
> such officials receive no compensation or other remuneration from
> the nonprofit corporation or other nonprofit entity.

Because chapter 171 generally preempts common-law conflicts of interest,[2] we conclude that section 171.009 permits an independent school district trustee to serve as a director of

---

[2]In Attorney General Opinion JM-1006 (1989) (dated January 12, 1989), this office concluded that the common law of conflicts of interest and dual agency prohibited a member of a county commissioners court from simultaneously serving without compensation on the board of a nonprofit corporation established to treat AIDS patients that had business dealings with the county. At the time, chapter 171 of the Local Government Code did not include section 171.009. The opinion concluded that chapter 171 was inapplicable because the county judge was not compensated for his services, and that the common law of conflicts of interest therefore continued to apply. *See also* Attorney General Opinion H-1309 (1978). The legislature, in enacting section 171.009 in 1989, appears to have overruled this

the foundation, provided he or she receives no compensation or other remuneration for doing so.

In addition, we note that the legislature recently enacted an amendment to the Education Code which specifically governs certain conflicts of interest on the part of school district trustees. *See* Acts 1993, 73d Leg., ch. 964, § 2 (eff. June 19, 1993). Section 23.201 of the Education Code provides as follows:

> (a) The board of trustees of a school district may not enter into a contract with a trustee of the district, the spouse of a trustee, or a business entity in which a trustee or the spouse of a trustee has a significant interest until the trustee's current term has expired or until the trustee has resigned and a successor has been chosen to fill the vacancy . . . .
>
> (b) In this section, the term "business entity" has the meaning provided by Section 171.001, Local Government Code.
>
> (c) For purposes of this section, a person has a substantial interest in a business entity if the person has a substantial interest in the business entity for purposes of Chapter 171, Local Government Code.
>
> (d) This section prevails over Chapter 171, Local Government Code, to the extent of any conflict.

This office recently considered this provision and the meaning of the term "significant interest," concluding in pertinent part:

> the *intent* of this legislation was to proscribe self-dealing. In applying section 23.201, one should focus on the extent to which an individual trustee might benefit from a particular contract.

Attorney General Opinion DM-240 at 5 (1993). Although we find it highly unlikely that an independent school district trustee who serves on the board of directors of a non-profit foundation without compensation or any other remuneration has a "significant" interest in the foundation, such a determination requires the resolution of factual issues and is therefore beyond the purview of the opinion process. *See id.* ("Whether a particular set of circumstances are included within the meaning of 'significant interest' requires the resolution of factual issues not appropriate to the opinion process.")

Although an independent school district trustee is no longer prohibited by common law from serving as a director of a private, non-profit corporation which has business

---

(footnote continued)
opinion, at least with respect to local public officials' service on the boards of private, non-profit corporations. *See* Acts 1989, 71st Leg., ch. 475, § 2, at 1648 (eff. Aug. 28, 1989).

dealings with the school district if he or she does so without compensation or any other remuneration, *see supra* note 2, we caution that section 171.009 of the Local Government Code does not necessarily insulate the trustee from the possible legal consequences of a conflict of interest which might arise with respect to a particular matter in which the interests of the independent school district and the foundation are at odds. In particular, as the result of such a situation, a trustee, in his or her capacity as director of the foundation, could become the subject of a civil suit for breach of his or her fiduciary duty to the private, non-profit corporation. *See Blocker v. State*, 718 S.W.2d 409, 415 (Tex. App.--Houston [1st Dist.] 1986 no writ) (holding that directors of non-profit corporation breached their fiduciary duty). Therefore, a trustee would be well-advised to avoid engaging in conduct which might give rise to such a cause of action.

Finally, you ask if "an ISD's provision [] of free office [space] and incidental items violate[s]" either an order entered by the federal district court in *United States v. Texas*, Civ. A. No. 5281 (E.D. Tex.), or Texas Education Agency ("TEA") requirements resulting from that order. *United States v. Texas* was filed on March 6, 1970. In late 1970, the federal district court found that the policies and practices of TEA had frequently encouraged or resulted in the continuation of the vestiges of racially segregated education in Texas. *United States v. Texas*, 321 F. Supp. 1043, 1057 (E.D. Tex. 1970), *aff'd*, 447 F.2d 441 (5th Cir. 1971), *cert. denied*, 404 U.S. 1206 (1972). Thereafter, an order was issued encompassing student assignments and transfers, and district boundaries. In addition, orders were included regarding students, faculty, staff, transportation, extracurricular activities, and facilities. *See United States v. Texas*, 447 F.2d 441 (5th Cir. 1971). These orders required TEA to take numerous actions to facilitate and encourage desegregation. TEA was prohibited, for example, from permitting school extracurricular activities which would result in segregation or discrimination. *See id.* at 445-46. TEA was ordered to suspend the accreditation of school districts operating extracurricular activities in a discriminatory manner and to reduce their funding. *See id.* at 446. Since 1970, numerous additional orders have been issued in the action. *See generally United States v. Texas*, 628 F. Supp. 304, 306-07 (E.D. Tex. 1985).

Given the extensive scope of these orders and the very minimal facts you have provided, this office is unable to determine whether the relationship between the independent school district and the foundation violates any of the court's orders. The independent school district's concerns with respect to compliance with the orders in *United States v. Texas* would be more appropriately directed to the TEA in the first instance.

## S U M M A R Y

Section 23.26 of the Education Code authorizes the board of trustees of an independent school district to accept donations and other gifts from a private foundation, and to supply the foundation with office space and the use of other school property, assuming a school purpose is served. The question whether article III, section 52(a) of the Texas Constitution prohibits the board from supplying

the foundation with office space and the use of other school property depends upon whether this would serve a public purpose, appropriate to the function of an independent school district; whether adequate consideration would flow to the public; and, whether the board would maintain sufficient controls over the foundation's activities, to ensure that the public purpose is actually achieved.

Section 171.009 of the Local Government Code permits the trustee of an independent school district to serve as a director of a private, non-profit corporation which does business with the school district, provided he or she receives no compensation or other remuneration for doing so. The determination whether section 23.201 of the Education Code prohibits the board of trustees of an independent school district from entering into a contract with a business entity for which a trustee serves on its board of directors without compensation or any other remuneration requires the resolution of factual issues and is therefore beyond the purview of the opinion process.

Very truly yours,

**DAN MORALES**
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General