**UNITED STATES of America,**

v.

**Jim GARRISON.**

**No. 71–541–Crim.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

July 24, 1972.

308

Gerald J. Gallinghouse, U. S. Atty.,
Michael H. Ellis, Asst. U. S. Atty., New
Orleans, La., Jimmy L. Tallant, Atty., U.

S. Dept. of Justice, New Orleans, La., for plaintiff.

Louis B. Merhige, Guy Johnson, New Orleans, La., for defendant.

## MEMORANDUM OPINION AND ORDER

BOYLE, District Judge:

The three count indictment herein charges that the defendant, who is and at the times alleged was District Attorney for the Parish of Orleans, State of Louisiana, did make and subscribe and caused to be made and subscribed income tax returns for the years 1965, 1966 and 1967 verified by written declarations that they were made under the penalties of perjury which he did not believe to be true and correct as to every material matter in violation of 26 U.S. C.A. § 7206(1).

The defendant has filed a Motion to Dismiss, a Motion for Bill of Particulars and a Motion for Discovery and Disposition to each of which the Government has filed written response.

These motions have been submitted for adjudication, without oral argument, on defendant's memoranda in support of his motions, the Government's memoranda in opposition and the defendant's reply memoranda.

After careful consideration of the motions and the responses thereto, the memoranda and the law applicable, we now rule.

### The Motion to Dismiss

The stated basis of the Motion to Dismiss is "the Grand Jury [which returned the indictment] was prejudiced by pre-indictment publicity."

Defendant's memorandum filed in support of this Motion states: "Counsel, therefore, reproduced herein, verbatim, the memorandum in support of the motion to dismiss in criminal action number 71–542" because the "arguments advanced in support of that motion have equal cogency in the matter herein." The Motion to Dismiss in No. 71–542A is based on the contention that Grand Jury was prejudiced by the same pre-indictment publicity which mover cites in support of the Motion in the instant case.

Beyond submitting a photocopy of newspaper serialization in eighteen installments in the period from July 1, 1971 through July 21, 1971 of the affidavit executed by the Government Agent in support of the complaint, filed before the United States Magistrate on June 30, 1971, in which the defendant, two police officers and seven other citizens were charged with violations of Title 18 U.S.C. Sections 1511, 1955, 1952, 2 and 371,[1] and a photocopy of the Revised U. S. Department of Justice Fair Trial-Free Press Guidelines,[2] no other evidence in support of the Motion to Dismiss was offered by mover. Garrison does not contend that the newspaper serialization of the complaint affidavit, as it appears in the public record, is not accurate.

The indictment charging the defendant, along with the others named in the complaint aforesaid, with a violation of Title 18 U.S.C. Section 1511 was returned on December 3, 1971 in No. 71–542A Criminal. The indictment in this case was also returned on December 3, 1971.[3]

To be successful in his challenge the defendant must show that the grand

1. See No. 71–542A Criminal.

2. As published in The Criminal Law Reporter, Vol. 10, No. 6, November 10, 1971.

3. Another indictment was returned in No. 71–530A Criminal on December 1, 1971 charging, among others, some of the defendants, but not Garrison, in No. 71–

542A Criminal with violations of Title 18 U.S.C., Sections 371, 1952, 1955 and 2. The same Grand Jury found all three indictments. It was impaneled on August 9, 1971 and heard evidence over a period of several months before returning the indictments on December 1st and 3rd, 1971.

jury was in fact prejudiced by the publicity. Beck v. U. S., 298 F.2d 622 (9 Cir. 1962), cert. den. 370 U.S. 919, 82 S. Ct. 1558, 8 L.Ed.2d 499.

In the Beck case, prior to Beck, a prominent Union President and a public figure, being indicted for violation of the Federal Income Tax laws, wide publicity had been given to the investigation by a United States Senate Committee on Improper Activities in the Labor or Management Field and to an investigation, announced by a State of Washington county prosecutor, into possible misuse of his union's funds by Beck. Beck had been very much in the headlines as a corrupt labor boss and there was a high concentration of such headlines in the State of Washington where Beck lived and was indicted. On such evidence of publicity, Beck urged that it was apparent "that he was denied his right to an impartial Grand Jury." The trial Court refused to dismiss the indictment and the Circuit Court, in affirming that action, found "There was no evidence that in fact the grand jury was prejudiced or that any member thereof had been affected by the vast amount of publicity accorded Beck" (p. 627). The appellate Court's ruling was " . . . that a specific showing of prejudice is necessary to make erroneous the action of the trial judge in refusing to dismiss the indictment" (p. 627).[4]

■ Merely citing the publicity falls far short of establishing that the grand jury here was, in fact, prejudiced against him. Specific showing of prejudice is necessary to vitiate the indictment and no such showing has been made.

To accept Garrison's contention that merely because there was publicity (for some of which he was himself responsible) the grand jury was so prejudiced and biased that it did not give fair and impartial consideration to the matters presented to it would require a finding, without evidence in support thereof, that the grand jurors completely ignored the evidence presented to them and violated their oaths.

Absent the required specific showing of prejudice, to apply Garrison's contention as a rule of law would produce absurd results. In such a case no persons, who may be prominent and well known or who may be elected officials, whether popular and established, as defendant contends he is, or not, could be charged with the commission of any crime because doubtlessly the fact of charging would cause unfavorable pre-indictment publicity, thus precluding indictment or vitiating one found by a grand jury.

The mover suggests the Court take judicial notice of other publicity resulting from "television, radio and newspaper reports." If we did we should also take judicial cognizance of the fact that the defendant himself contributed to the very publicity which he claims prejudiced the Grand Jury by statements to the news media attacking the Federal Government and indeed generating further publicity by causing charges to be filed against the United States Attorney and the Attorney in charge of the New Orleans Organized Crime Strike Force. Judicial notice of such other publicity would not in and of itself—just as the offered newspaper serialization of the complaint affidavit does not—establish that the grand jurors were, in fact, prejudiced thereby.

Mover also complains in argument that prejudice resulted from the fact that the United States Attorney "passed out to members of the media an unsigned copy of the *instant* indictment before the grand jury was afforded an opportunity to vote upon it." (Emphasis ours). Since, as already noted, his memorandum states that it is a verbatim reproduction of his memorandum filed

---

4. See also Beck v. Washington, 369 U.S. 541, 545–555, 82 S.Ct. 955, 957–963, 8 L.Ed.2d 98 (1962) ; U. S. v. Osborn, 350 F.2d 497, 506–507 (6 Cir. 1965), aff. 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966) ; U. S. v. Hoffa, 205 F.Supp. 710 (S.D.Fla.1962), appeal dismissed 309 F.2d 680 (5 Cir. 1962), cert. den. 371 U.S. 892, 83 S.Ct. 188, 9 L.Ed.2d 125.

in support of his Motion to Dismiss in No. 71–542A, Criminal, we consider that the indictment referred to is not the indictment in this case, but rather that in No. 71–542A, charging a violation of Title 18 U.S.C. § 1511. We note the Government's memorandum opposing the Motion states:

"On December 1, 1971, a group of individuals were indicted by the Special Organized Crime Grand Jury which returned the instant indictment and the indictment charging the defendant with violation of Title 18, United States Code, Section 1511. A few of the Section 1511 indictments in which the defendant was charged two days later were accidentally given to news reporters and attorneys. This occurred at the door of the grand jury room. Within a matter of seconds the error was discovered and an attempt was made to retrieve the documents. By evening the government attorneys had accounted for all the indictments plus some copies which had been made by one of the individuals present at the grand jury door. The government attorneys believed that all copies had been returned and are not aware of any publicity concerning the unsigned indictment prior to the defendant himself calling a news conference. It was the defendant, not the government attorneys, responsible for the publicity involving the unsigned indictment."

In his reply memorandum, mover has not taken issue with the foregoing quoted statements.

■ Again, no specific showing of prejudice is made by the defendant with respect to disclosure of the unsigned indictment two days before its return. And the defendant makes no claim that the publicity which he himself caused to be given the incident prejudiced the grand jurors in their consideration of the evidence on which it voted the income tax violation indictment returned in this case. We cannot conceive that the law would permit a defendant to es-

cape being indicted because he initiates pre-indictment publicity contended to be prejudicial, particularly when, as in this case, no showing of specific prejudice has been made.

The mover concedes the necessity of the filing of the complaint affidavit from which the publicity in question sprang. Indeed, he must. His office, as a prosecuting authority, must act similarly with respect to criminal prosecutions in the State Court in which he is the prosecutor. But, he says, "the United States Attorney could nevertheless have asked that it be sealed," thus preventing the publicity complained of until the period of prejudice passed.

The complaint affidavit when filed became a public record open to all the public, including the media. We have been referred to no authority by mover which would have required sealing or authorizing the United States Attorney to seek sealing of the affidavit in the circumstances of this case.

■ As Judge Christenberry pointed out, in his ruling in No. 71–530A with respect to the same pre-indictment publicity being considered here, such publicity engendered in cases involving the defendant, an elected prosecuting officer himself, and law enforcement officers, among others, "was natural and inevitable." We subscribe to Judge Christenberry's further conclusion that "because the institution of federal criminal proceedings against state and local officials often strikes sensitive public nerve chords, it appears to have been prudent of the government to initiate the unveiling of its investigation with an ample showing of evidence," which, of course, was done on and in the public record.

There remains mover's complaint that release of the complaint affidavit violated the Revised U. S. Department of Justice Fair Trial-Free Press Guidelines. Mover in brief acknowledges that those Guidelines "became effective on October 28, 1971, which is after the fact of the prejudicial publicity complained of in this motion."

■ This Court adopted "Free Press-Fair Trial" Rules on September 19, 1969. The defendant does not claim that these rules were violated. Neither the Court's rules nor the Department of Justice Guidelines require that the complaint affidavit be filed secretly or be sealed. Nor do they require the United States Attorney to have sought the sealing of the affidavit.

Defendant has made no specific showing that the Government or its representatives have made any public extrajudicial statement which went beyond the public record or beyond the permissible limits set out in both the Court's Rules and the Department of Justice Guidelines in any statements necessary to inform the public of the nature of the case. See the Court's Fair Trial-Free Press Rules Nos. 2, 3 and 4; Department of Justice Guidelines No. 4.

Therefore, the Motion to Dismiss should be, and it is hereby, denied.

## THE MOTION FOR BILL OF PARTICULARS

■ In response to defendant's requests for particulars, the Government has furnished many particulars voluntarily. In his reply memorandum to the Government's memorandum opposing the Motion for Particulars, except to the extent it has voluntarily furnished particulars, the defendant states his " . . . Application for Particulars contains 13 requests . . ." (p. 3). Evidently, defendant does not regard the items numbered 14 and 15 in the application as requests. These are catchall requests, if they are requests, and as such, must be denied. Neither the Government nor the Court is obliged to search for "particulars" which the defendant may have "overlooked" requesting. However, the Government, in its response to defendant's Number 14, claims that in the Schedule of Corrected Income furnished defendant it furnished many particulars he did not request.

In his reply memorandum (pp. 3 & 4) defendant further states " . . . nine of [the 13 requests] have been sat-isfied, or have become moot" and " . . . notes there is no need for adjudication of the requests made in this Application in Paragraphs: 1, 2, 4, 5, 9, 10, 11, 12 and 13."

He does take issue with the Government's responses to requests Nos. 3, 6, 7 and 8.

■ In its response to request No. 3, the Government has furnished the identity of the source and the amounts, by years, of the specific items of income claimed to have been unreported. The defendant is not entitled to the further particulars which he contends he should be furnished with respect to those specific items of income. It is noted that in memorandum (p. 4) defendant, referring to the legal fee of $13,500.00 shown to have been received in 1966 from Louisiana Loan & Thrift Company, states that there is a "footnote to Item 21 of the Schedule of Corrected Income which indicates that this fee was not received in cash." He then urges that he is entitled to know whether the Government alleges he received a legal fee in cash or some other commodity. The footnote in question does not relate to the fee of $13,500.00 claimed to have been unreported. Rather it relates to "21. Purchase of Stock—LL&T (1)—$10,000.-00."

■ In his request No. 6, the defendant asks that he be furnished with a list of his bank deposits and withdrawals showing the amounts, dates and character of each. The Government's response is that defendant seeks information within his knowledge or which is available in his own records not made available to investigating agents. We believe the defendant is not entitled to the particulars sought in No. 6.

■ The Government suggests in its response, that request No. 7 seeks the government's evidence to be used to prove willful intent and to discover its witnesses. To grant request No. 7 would require the Government to disclose the identity of witnesses and evidence which we do not believe defendant

is entitled to have disclosed at this stage of the proceedings.

 In his request No. 8, the defendant seeks to be advised of the pecuniary loss, if any, suffered by the Government as a result of the tax returns filed. While contending that such a loss is immaterial in this case, except on the issue of motive and intent, the Government in further response has filed the Schedule of Unreported Income previously referred to. We consider that the Schedule adequately informs the defendant, except in the following respects. In the Schedule there are shown among others, Items "18. Purchase of stock 1,500.00—19. Investment in real estate 1,500.00—11,450.00—23. Less: Fee paid to Another Attorney (550.00)." The defendant contends he is entitled to further particularization as to these items and we agree. We note that in its response to request No. 3 the source of legal fees are shown (Item 2—Legal fee —Louisiana Loan & Thrift Corp.— $13,500.00; Item 3—Legal fee—Barry —$726.00) and elsewhere in the Schedule of Unreported Income the identity of stock purchased is shown (Item 21— Purchase of Stock—LL&T—$10,000.00).

Therefore, it is Ordered that:

1. To the extent of those particulars furnished by the Government in its Response to the Defendant's Motion for Bill of Particulars and to the extent that further particulars are hereinafter ordered furnished by the Government, the defendant's Motion be granted and in all other respects the Motion be denied.

 2. The Government furnish to the defendant the identity of the stock, the real estate and the attorney referred to in Items 18, 19 and 23, respectively, of the aforesaid Schedule of Unreported Income filed in connection with the Government's Response to defendant's request No. 8.

### THE MOTION FOR DISCOVERY AND INSPECTION

The motion seeks to require the Government to produce for inspection and copying a wide variety of materials.

The Government has filed a formal response in which it states it will produce the materials sought to be discovered in Paragraphs 1 through 7 of the Motion. As to those materials, the Motion is granted.

The requests for production of the materials described in Paragraphs 8 through 15 we will treat with on the basis of the individual Paragraphs.

### Paragraphs 8–9 and 15

Notwithstanding its opposition to granting the Motion with respect to the materials described in Paragraph 15 of the Motion, the Government in its response (see Paragraphs 8 and 15 thereof), has no objection to making the materials available to defendant for inspection and copying thereof ten days in advance of trial, subject, however, to the exclusion from discovery of reports, memoranda or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective witnesses to government agents, except as provided in 18 U.S.C. § 3500, or of summary papers prepared by government summary witness during the course of the trial and provided the Court conditions such discovery on defendant's production, ten days in advance of trial, of similar materials which the defendant intends to offer as evidence at the trial.

 Undoubtedly, some of the materials to be made available to the defendant pursuant to other requests for discovery either voluntarily by the Government in accordance with its response to defendant's Motion for Discovery and Inspection and its response to defendant's Motion for Bill of Particulars or the Court's orders with respect to said Motions will fall within the description of some of the materials sought to be discovered by Paragraph 15 of the Motion. To the extent that they may be, the defendant will be afforded the discovery sought. Beyond that, however, we believe the Motion, as to Paragraph 15 thereof, should be and it is denied

without prejudice to the defendant at some further stage of these proceedings to file a Rule 16(b) F.R.Cr.P. Motion or to the Government, in the event such a Motion is filed by defendant, to file a Rule 16(c) F.R.Cr.P. Motion.

■ Paragraphs 8 and 9 of the Motion seeks production and inspection of "all documents and tangible objects which are 'material' to the preparation of the defense" (Paragraph 8) and "all material of whatever nature known to the Government which is arguably exculpatory in nature or favorable to the accused or which may lend to exculpatory material or which might arguably be used to impeach government witness on trial of the case" (Paragraph 9).

Except to the extent that materials to be furnished voluntarily by the Government, as reflected in its Response to Defendant's Motion for Production and Inspection, may include materials sought by defendant in Items 8 and 9 of his Motion, the Motion should be and is denied. However, this denial shall be without prejudice in the event the Government, prior to trial, and as required by and consistent with due process, does not turn over to the defendant any evidence favorable to him if such evidence is material to the case.

### Paragraph 10

■ In Paragraph 10 of his Motion the defendant requests the "names and addresses of all witnesses which [the] government intends to call at the trial, together with the record of prior felony convictions of any prospective witness." In its Response to the defendant's Motion, the Government opposes the granting of this request in toto. However, it is noted that in its memorandum in support of its opposition the Government volunteers to "reveal any convictions material to the issue of credibility if it has knowledge of the same." (Government's Memorandum, Paragraph 4, page 5).

The defendant's Motion as to the discovery sought in Paragraph 10 thereof

is denied, except to the extent of revelation of the aforesaid convictions of witnesses to be called on trial by the Government.

### Paragraph 11

■ In Paragraph 11 of the Motion, the defendant seeks, and the Government opposes, discovery of "all statements made to government agents and grand jury transcript of testimony of all witnesses [the] government intends to call at the trial." Except to the extent required and in accordance with the provisions of the Jencks Act, 18 U.S.C. § 3500, the discovery sought in Paragraph 11 of the Motion is denied.

### Paragraph 12

■ Paragraph 12 of the Motion states that "though included generally above," the defendant wants discovery of the materials particularly described therein. Since the defendant acknowledges that those materials are included in materials previously described in his Motion (in Paragraphs 3 and 5 it appears to us) and the Government has responded that it will produce such previously described materials, the Motion as to the materials described in Paragraph 12 thereof, is granted.

### Paragraph 13

■ Though it appears that the information sought by Paragraph 13 of the Motion should properly be sought as particulars, the Government has responded that it will voluntarily make available to the defendant that information, and its response has set forth, presumably, the details thereof. It is also noted that in its response to Paragraphs 7 and 13, the Government, while stating its unwillingness to make available copies of the currency seized at defendant's residence, has committed itself to make such currency available for defendant's examination under the conditions stated, which we find to be reasonable. The Motion as to the Paragraph 13 materials is granted. The Government, however,

is not required to furnish defendant copies of the aforesaid currency. It shall be sufficient if said currency is made available for examination by the defendant under the conditions set forth in the Government's response to Paragraphs 7 and 13.

*Paragraph 14*

█ In response to Paragraph 14 of the Motion, the Government has stated that no warrants were executed in this case, but that arrest and search were executed in another case wherein the defendant was charged with violations of various provisions of Title 18, United States Code. While the Government suggests those warrants are a matter of public record (and would be available to the defendant), it nevertheless states it will make copies of same and the affidavits on which they were issued available to the defendant. In view of the Government's aforesaid responses, the Motion is denied, except to the extent of production of those copies of warrants and affidavits which the Government has stated its willingness to make available to the defendant.

█ The defendant also seeks discovery of intercept warrants, "whether executive or judicial." The Government has responded that no judicial "intercept warrants" exist in this or the case in which defendant was indicted for violation of 18 U.S.C. § 1511 (Criminal No. 71–542A). The response construes the term "executive intercept warrants" (the term is not defined in the motion) to refer to the "investigating agents' written authority to use electronic equipment in a consensual eavesdropping situation" and urges that "such documents, if any, are internal government documents and are not subject to discovery." As to discovery of judicial and executive "intercept warrants," the Motion is denied.

Counsel for the Government and the defendant are directed to confer with the Court with regard to a further order to be entered herein establishing the time at which and the manner in which the Government shall furnish the particulars and produce for inspection the materials ordered herein to be furnished and produced.