**UNITED STATES of America,
Appellant,**

v.

**SALUDA COUNTY SCHOOL DISTRICT
NO. 1 OF SALUDA COUNTY, SOUTH
CAROLINA, et al., Appellees.**

No. 73-2129.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1973.

Decided Dec. 13, 1973.

Thomas M. Keeling, Atty., U. S. Dept. of Justice (J. Stanley Pottinger, Asst. Atty. Gen., Brian K. Landsberg, John H. Newman, Ross L. Connealy, and Walter W. Barnett, Attys., U. S. Dept. of Justice and John K. Grisso, U. S. Atty., on brief), for appellant.

Robert McC. Figg and Terrell L. Glenn, Columbia, S. C. (Thomas H. Pope, Eugene C. Griffith, Newberry, S. C., Daniel R. McLeod, Atty. Gen. of S. C., Hardwick Stuart, Jr., Asst. Atty. Gen. and Joseph O. Rogers Jr., Manning, S. C., on brief), for appellees.

Before HAYNSWORTH, C. J., and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD and WIDENER, Circuit Judges, sitting in banc.

PER CURIAM:

This suit was instituted by the United States in May of 1969 under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6, against the Saluda County School District No. 1 of Saluda County, South Carolina, to require the defendants to afford equal educational opportunity to all students in the Saluda County School District without regard to race and to disestablish the dual system of schools then existing in the county.

On October 2, 1969, the district court ordered implementation of a plan proposed by the Department of Health, Education and Welfare to be effective for the 1970–71 school year. At the time suit was instituted the school district was serving 1655 white and 1091 black students and was composed of three schools, each of which accommodated both the primary and secondary grades (1–12). Two of the schools, Saluda and Riverside, were located in the Town of Saluda in proximity to each other, Saluda being predominantly white and Riverside being all black. The third school, Hollywood, located in rural Saluda County some ten miles from the Town of Saluda, had an all white enrollment of 340 students of which 87 were enrolled in grades 9–12. Under the plan proposed by HEW and approved by the district

court, the school system would have been desegregated by pairing Riverside and Saluda and closing the Hollywood school.

On October 31, 1969, Harold Longshore and others, parents of students in the Hollywood school, filed a motion to intervene together with a petition to amend the October 2nd order to permit Hollywood to continue to operate. Upon the representation of the intervenors that attendance zone lines for Hollywood were drawn on a nonracial basis, the Government did not interpose an objection to the petition, and on January 26, 1970, the district court amended its prior order and allowed Hollywood school to remain in operation to serve all students who lived within the zone as described on a map filed with the court. Under the plan, as amended, school enrollments in 1970–71 were as follows:

| School | Grades | Black | White | Total | Percent Black |
|--------|--------|-------|-------|-------|---------------|
| Saluda Elem. | K–4 | 355 | 376 | 731 | 48.6 |
| Saluda H. S. | 9–12 | 260 | 375 | 635 | 40.9 |
| Riverside Middle | 5–8 | 389 | 412 | 801 | 48.5 |
| Hollywood Elem. | 1–6 | 41 | 225 | 226 | 15.4 |
| Hollywood H. S. | 7–12 | 33 | 197 | 230 | 14.3 |
| | | 1058 | 1585 | 2663 | 39.7 |

As early as 1969, the educational viability of Hollywood school had been questioned by local, state and federal officials, and on April 4, 1972, a committee report was filed with the Saluda Board recommending the closing of grades 9–12 at Hollywood. This report was based upon a study of finances, recommendations by the State Department of Education, and a history of the enrollments, dropouts and limited curriculum. Shortly thereafter, a bill was introduced in the South Carolina Legislature and passed on May 22, 1972, as Act 1244 of the 1972 Legislative Session. Briefly stated, the Act provided for the establishment of Hollywood School District No. 4 in Saluda County to be governed by its own board of trustees, contingent upon approval by referendum of the electorate residing in the geographic area encompassing the proposed school district. The geographic area of the new district was described in the Act as coterminous with the Hollywood attendance zone theretofore recognized by the district court's order of January 26, 1970. The referendum pursuant to the Act was held on May 23, 1972, and the proposed school district was approved by a vote of 661 to 100.

On August 4, 1972, the intervenors petitioned for approval of the new school district and on August 17 and September 1, 1972, protective orders were entered which in effect preserved the status quo pending a decision by the Attorney General of the United States on a submission of the legislation pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. On November 13, 1972, the Attorney General entered an objection to the procedures used in the establishment of the new school district, and thereupon the Government filed its motion to dismiss the motion for approval. By order of February 23, 1973, the district court, finding the special legislative act to be unenforceable, granted the Government's motion and reinstated its order of January 26, 1970, bringing the Hollywood school within the operation of Saluda County School District No. 1.

In July of 1973, the Saluda Board filed a petition with the district court which in effect sought approval of a plan which would close the Hollywood High School but continue to operate the Hollywood

Elementary School with an expanded curriculum. The petition was accompanied by a comprehensive report of the Superintendent which pointed out the educational and financial desirability of the proposal. On July 17, 1973, over the objection of the Longshore intervenors, the district court entered an order recognizing the authority of the Board of Trustees of Saluda District over "any and all schools in Saluda County" and stating that "the transfer of Hollywood Grades 9, 10, 11 and 12 are declared within the power of the movants." In its order the court recognized that under the proposal Saluda High School would be the only high school in the county "so that discrimination in such school could not exist insofar as denial of any person's rights to an equal public education because of race, creed or color would be concerned." By order entered on August 3, 1973, the three individuals who had qualified as Trustees of the Hollywood District under the abortive procedure of Legislative Act 1244 were authorized to serve as Trustees of the Saluda District along with the six other members of that Board.

On August 20, 1973, the order which is the subject of this appeal was entered by the district court. In substance it stated that the Board of Trustees of the Saluda District "with the required legislative approval in writing" had adopted a resolution establishing the Hollywood School District as thereafter defined as a separate school district in accordance with the provisions of Section 21–112, Code of Laws of South Carolina—1962. The order recited that this action fell within the purview of the order of July 17, 1973, and that such order was modified "to the extent necessary to permit this action." It further retransferred the three Hollywood residents from the Saluda School Board to the Hollywood Board of Trustees. On its face the order indicated that it was entered with the consent of counsel for both the

Saluda School District and the Hollywood group. Conspicuous by its absence, however, was any indication that counsel for the United States either saw the order prior to its entry or consented thereto. Shortly thereafter the Government filed a motion with the district court seeking a stay of this order, stating that it had received neither a notice nor the opportunity to be heard prior to the entry thereof. In its motion the Government raised the constitutional question with respect to the racial composition of the Hollywood School District and also charged that the creation of the new school district in this manner was subject to the preclearance provisions of Section 5 of the Voting Rights Act.[1]

Thereafter on September 11, 1973, the district court conducted a hearing and entered an order directing the State Superintendent of Education to release both state and federal funds to the Hollywood School District prior to September 20, 1973. On the same date the court denied the motion of the United States to stay its order of August 30, 1973, pending appeal. This latter order stated:

"No order of this court has either authorized or condoned the creation of a new school district. This court has consistently refused to do so. Such issue is not before this court and was not before the court or passed on by the court in the orders of July 17, 1973, and August 20, 1973."

Despite this disclaimer by the district court, it is clear that in the context of this litigation the order of August 20, 1973, did in fact authorize and/or condone the establishment of the new school district, and it is equally clear that such action was totally at odds with the principles of Wright v. Council of City of Emporia, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972), and United States v. Scotland Neck Bd. of Educ., 407 U.S. 484, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972).

---

1. Counsel discussed the issue of the Voting Rights Act in both their briefs and oral argument. However, we deem it unnecessary to deal with the somewhat tangential question under the Voting Rights Act, since we find the constitutional issue clearly delineated in the record and the conclusion thereon inescapable.

The attempt of the appellees to preserve the predominantly white Hollywood enclave in a county where a dual school system had long flourished is precisely the conduct condemned by the Court in those decisions, and there is even more in the present case. The district court had before it, indeed it had approved, a proposal which it recognized would have erased the last vestiges of segregation from the high schools of Saluda County. Additionally, the proposal espoused by the Superintendent and Board of the Saluda School District would have increased the quality of the education for all school children in the county. The creation of the Hollywood District utterly frustrated the implementation of these proposals and unquestionably was an impediment to "the dismantling of the dual system." Wright v. Council of City of Emporia, *supra*, 407 U.S. at 460, 92 S.Ct. at 2203.

Counsel for the appellees urge upon us that the primary reasons for the creation of the new school district were non-racial in character. Even accepting this premise, however, it fails to pass constitutional muster for the "dominant purpose" test was specifically rejected in the *Emporia* case and the Court stated unequivocally "that splinter school districts may not be created 'where the effect—to say nothing of the purpose— of the secession has a substantially adverse effect on desegregation of the county school district.' "[2]

Finding the creation of the Hollywood School District to be constitutionally impermissible, the order entered by the district court on August 20, 1973, is vacated, and the case is remanded with directions to the district judge to take whatever steps may be necessary or appropriate to reinstate the authority of the Board of Trustees of Saluda School District No. 1 over all schools in Saluda County and to effect the transfer of Hollywood Grades 9 through 12 to Saluda High School.

Vacated and remanded with instructions.

---

2. 407 U.S. at 462, 92 S.Ct. at 2203.