508 F.2d 98
 UNITED STATES of America, Plaintiff, Wilmer-Hutchins
Independent School District et al.,
Plaintiffs-Intervenors-Appellees,
v.
STATE OF TEXAS et al., Defendants, City of Wilmer, Texas,
Defendant-Intervenor-Appellant.
 No. 74-3657.
 United States Court of Appeals, Fifth Circuit.
 Feb. 3, 1975, Rehearing Denied Feb. 19, 1975.
 
 A. Joe Fish, William A. McKenzie, Dallas, Tex., for appellant.
 Jerry F. McCarty, Billy J. Moore, Ennis, Tex., for appellees.
 John L. Hill, Atty. Gen., Roland Allen, Asst. Atty. Gen., Austin, Tex., for State of Texas.
 Samuel Flanagan, Joe Rich, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., for United States.
 Sylvia M. Demarest, Dallas Legal Services, Dallas, Tex., for Tasby, and others.
 Edward B. Cloutman, III, Dallas, Tex., for other interested parties.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before GEWIN, GOLDBERG and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 The Wilmer-Hutchins Independent School District (WHISD) is a political entity whose territory includes the City of Hutchins, the City of Wilmer and a substantial area in the City of Dallas. Most of the white students live in the southern part of the district, primarily in Wilmer and Hutchins, while the black majority lives in the northern part of the district, primarily in the Dallas area. The boundary of the district has not changed since 1927. The schools in WHISD were fully integrated in 1970. Two prior attempts have unsuccessfully been made to disannex the predominately white southern portion of the district.
 
 
 2
 Acting under Section 19.161 of the Texas Education Code, V.T.C.A., (a codification of Articles 2768 and 2769 V.T.C.S., 1905) an election was held by Wilmer on June 8, 1974, and its Council certified the election and passed an ordinance to assume control of the schools within the municipality on June 11, 1974. Hutchins held an election on June 11, 1974, which was certified by its Council, and an ordinance was passed assuming control of the public schools on June 18, 1974. The respective cities advised the Board of Trustees of WHISD that they had acquired control of the public free schools within their city limits and requested WHISD to transfer the control and management of the schools to Wilmer and Hutchins.
 
 
 3
 The Texas Education Agency (TEA) having been informed of the actions taken by Wilmer and Hutchins made an investigation of the proposed disannexations pursuant to the requirements imposed upon it by a previous standing district court order. The investigation disclosed that in the 1973-74 school year approximately 5380 students were enrolled, 90.5 per cent of whom were black or Mexican-American. WHISD has eight school buildings. Four are located in Dallas, two in Hutchins with a total capacity of 900 students, one in Wilmer with a total capacity of 660 students and one high school on the boundary of Wilmer and Hutchins with a capacity of 1530 students. The four buildings located in Wilmer and Hutchins account for 46.7 per cent of the WHISD total capacity. The proposed Wilmer Independent School District would have an enrollment of 389 students and the proposed Hutchins Independent School District would have an enrollment of 350 students for a total of 739 students in Wilmer and Hutchins or 13.7 per cent of the WHISD total enrollment.
 
 
 4
 During the TEA investigation Hutchins began the registration of students and used the facilities of the Elementary school building. Although the superintendent of WHISD requested the Hutchins officials to leave they refused to do so, taking the position that the school building had become the property of the City of Hutchins. The expected confusion ensued. The result of the investigation by TEA demonstrated the following racial composition of the current and proposed districts:
 
 Total Enrollment % Minority
 
 5
 WHISD-1973-74 5380 90.5
Proposed Wilmer 389 48.6
Proposed Hutchins 350 42.9
Remaining WHISD 4641 97.6
 
 
 6
 TEA accordingly denied Hutchins' and Wilmer's request for recognition and accreditation.
 
 
 7
 Upon application of WHISD for injunctive relief the district court found that the creation of the proposed districts would increase the minority population of WHISD in violation of the district court's outstanding order of April 20, 1971, reentered July 31, 1971, in United States v. Texas, E.D.Tex.1970, 321 F.Supp. 1043, supp. mem. opinion, 330 F.Supp. 235, aff'd with modifications, 5 Cir. 1971, 447 F.2d 441, stay denied sub nom. Edgar v. United States, 1971, 404 U.S. 1206, 92 S.Ct. 8, 30 L.Ed.2d 10, cert. denied 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663. Under this order the TEA was required to investigate each proposed change of school district boundaries and to disapprove those which 'in fact, create, maintain, reinforce, renew, or encourage a dual school system based on race, color, or national origin.' 447 F.2d at 444. The district court preliminarily enjoined Wilmer and Hutchins from occupying or attempting to occupy any WHISD school; from registering any student within WHISD; and from carving out any new school district from WHISD. This appeal by the City of Wilmer ensued.[1] We affirm.
 
 
 8
 The attempt to create splinter school districts in the circumstances here related flies in the face of Wright v. City of Emporia, 1972, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 and United States v. Scotland Neck Bd. of Educ., 1972, 407 U.S. 484, 92 S.Ct. 2214, 33 L.Ed.2d 75.
 
 
 9
 In City of Emporia the Supreme Court noted with approval that
 
 
 10
 federal courts . . . have held that splinter school districts may not be created 'where the effect-- to say nothing of the purpose-- of the secession has a substantial adverse effect on desegregation of the county school district.' 407 U.S. at 462, 92 S.Ct. at 2203.
 
 
 11
 Here the result of the splinter districts would be to create 'a refuge for white students of the (WHISD) system.' Scotland Neck, supra 407 U.S. at 489, 92 S.Ct. at 2217.
 
 
 12
 Preliminary relief was also mandated, not only because of the racial considerations of the spin off districts, i.e. the creation of two districts of approximately 50 per cent white students from a district now 91 per cent minority, but also because WHISD would have lost 47 per cent of its school building capacity with a loss of only 14 per cent of its students, and this would have been accomplished with no provision made for the payment of a bonded indebtedness of $2.2 million.
 
 
 13
 Recognizing, but attempting to avoid the impact of these decisions, Wilmer argues that the inevitable black encroachment in WHISD makes the difference between the 90,5 per cent combined black and Mexican-American enrollment for 1973-74 and the 97.6 per cent combined black and Mexican-American enrollment expected for WHISD under the proposed disannexation plan de minimis. We dismiss this as a self defeating test.
 
 
 14
 Wilmer further contends that certain agencies of the United States, the Dallas Independent School District and WHISD have acted to create, maintain or perpetuate dual school systems and that it is inequitable to restrain Wilmer from creating a racially balanced municipal school district when this could be accomplished and the racial imbalance in the remaining portions of WHISD could be relieved by consolidating them with the Dallas Independent School District. We are unpersuaded.
 
 
 15
 At the outset, Wilmer offered no evidence of inter-district discriminatory acts or policies and inter-district effect. Cf. Milliken v. Bradley, 1974, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069. Equally important, we are reviewing the issuance of a preliminary injunction, not a final judgment after a trial in the district court. Accordingly, we do not inquire into the merits except to the extent they bear on whether WHISD is likely to prevail. See Nelms v. United Ass'n of Journeymen and App. of Plumbing, etc., 5 Cir. 1968, 405 F.2d 715. In the light of City of Emporia, Scotland Neck and United States v. Saluda County School Dist. No. 1, 4 Cir. 1973, 488 F.2d 804, WHISD carried the day on this point. What we have already said suffices to underscore the presence of the other prerequisites for granting a preliminary injunction, i.e. that there was a substantial injury if the injunction was that the threatened injury to WHISD was great with no showing that the injunction would result in any immediate damage to Wilmer; and finally that the granting of the preliminary injunction would not disserve the public interest since maintaining the status quo pending a full trial on the merits was the appropriate means to determine whether the proposed districts would contribute to, or destroy, a unitary, nonracial system of public education. Canal Authority v. Callaway, 5 Cir. 1974, 489 F.2d 567. We conclude that the district court properly exercised its discretion in granting the preliminary injunction and we therefore decline to disturb it. Alabama v. United States, 1929, 279 U.S. 229, 49 S.Ct. 266, 73 L.Ed. 675.
 
 
 16
 Finally, Wilmer complains that this cause was required to be heard by a three-judge court under 28 U.S.C.A. 2281 because injunctive relief was sought against the operation of a state statute on the grounds of the unconstitutionality of the statute as applied. We disagree. The constitutionality of Section 19.161 of the Texas Education Code on its face, or as it is applied, is not in issue. It is not self executing. It does no more than authorize municipalities to take further legislative action precisely as Wilmer and Hutchins did here. It is the municipal action taken by cities that is sought to be enjoined. This distinction was clearly drawn in Ex parte Bransford, 1940, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249:
 
 
 17
 It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court.
 
 
 18
 See also, Griffin v. School Board, 1964, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256.
 
 
 19
 Affirmed.
 
 
 
 [1]
 The City of Hutchins did not appeal