David Lee HAYS, a minor, through his parent and next friend Ann Hays, et al., Plaintiffs,

v.

Carl McMILLAN, superintendent of the Wilmer-Hutchins Independent School District, et al., Defendants.

No. CA 3-75-1441-C.

United States District Court,
N. D. Texas,
Dallas Division.

July 23, 1976.

As Amended July 28, 1976.

William A. McKenzie, McKenzie & Baer, Dallas, Tex., for plaintiffs.

Robert J. Caraway, Dallas, Tex., for WHISD, McMillan & Kyser.

Warren Whitham, Spafford, Gay & Whitham, Dallas, Tex., for Dr. Estes, Bill Hunter and DISD.

Michael P. Carnes, U.S. Atty., William F. Sanderson, Jr., Asst. U.S. Atty., Dallas, Tex., and Rex E. Lee, Asst. Atty. Gen., Stanley D. Rose, David Epstein, Paul T. Michael, Civ. Div., Dept. of Justice, Washington, D.C., for HUD.

Lois C. Bacon, Asst. City Atty., Dallas, Tex., for City of Dallas & Geo. Schrader.

Frank P. Hernandez, Dallas, Tex., for Dallas Housing Authority and Bill Darnall.

John L. Hill, Atty. Gen. of Tex., Roland H. Allen, Asst. Atty. Gen., Austin, Tex., for Dr. Marlin Brockette & TEA.

Marvin Thomas, Dallas, Tex., for Mrs. E. M. Taylor and Board of Education of Dallas County.

## MEMORANDUM OPINION AND ORDER

WILLIAM M. TAYLOR, Jr., Chief Judge.

The Court has before it motions, filed by each defendant, to dismiss this suit for lack of subject matter jurisdiction and failure to state a claim upon which relief can be

granted. The essence of the complaint, filed by plaintiffs on November 26, 1975, is that the defendants, either alone or acting together, caused or maintained the existence of a racially segregated public school system in the Wilmer-Hutchins Independent School District ("WHISD") contrary to the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs request the Court to sever a geographical area located within the boundaries of WHISD which contains a large number of racial minority students and annex that area to the Dallas Independent School District ("DISD").

### A. Factual Background

Plaintiff David Lee Hays is a student in the public school system operated by WHISD, while plaintiffs Ruben, Lydia and Alberto Casarez are students at private schools. The remaining plaintiffs are the Cities of Wilmer, Texas and Hutchins, Texas. Each city is a municipal corporation organized and existing under the laws of Texas.

There are sixteen defendants in this action who can be divided into the following groups due to the relationships involved.

Wilmer-Hutchins Independent School District, Carl McMillan and Billy Kyser can be referred to as the "WHISD defendants." These defendants are alleged (i) to operate a public school system which is segregated by race, (ii) to have failed to take the necessary steps to prevent resegregation of schools within their jurisdiction, and (iii) to have not dismantled the vestiges of a dual school system segregated by race which previously existed.

The Dallas Independent School District, Dr. Nolan Estes and Bill Hunter can be referred to as the "DISD defendants." These defendants are alleged (i) to have failed to eradicate the vestiges of a dual school system, and (ii) to have drawn or enforced their own school attendance zones which produced segregated housing patterns within their jurisdictional boundaries. The purported conduct of the DISD defend-

ants is alleged to have had a significant segregative effect on the WHISD schools.

The City of Dallas, Texas and George Schrader can be referred to as "Dallas." The plaintiffs claim that Dallas, through its municipal zoning ordinances, maintains or promotes housing patterns within its boundaries which are segregated by race. Such conduct, it is alleged, has abetted and compounded the unlawful conduct by the WHISD and DISD defendants.

The Dallas Housing Authority and Bill Darnall can be referred to as "DHA." It is claimed that DHA caused subsidized housing projects to be constructed and operated within the boundaries of WHISD. Such conduct is alleged to have abetted and compounded the unlawful conduct by the WHISD and DISD defendants.

The United States Department of Housing and Urban Development and Carla Hills can be referred to as the "government." It is alleged that the government has given assistance, financial and otherwise, to DHA for the construction and operation of subsidized housing projects which are located within WHISD. The conduct is claimed to have abetted and compounded the unlawful conduct of the WHISD and DISD defendants and, furthermore, fostered and perpetuated a segregated school system within WHISD.

The Texas Education Agency and Dr. Marlin Brockette can be referred to as "TEA." The TEA is alleged to have failed to prevent the resegregation of the public schools within WHISD. Furthermore, TEA is also alleged to support the segregated public school systems of WHISD and DISD with the use of state funds.

The Board of Education of Dallas County, Texas and Mrs. E. M. Taylor can be referred to as the "Board of Education." The Board of Education is alleged to have failed to prevent the resegregation of the public schools within WHISD.

The genesis of this suit is found in *United States v. State of Texas*, 321 F.Supp. 1043 (E.D.Tex.1970); 330 F.Supp. 235 (E.D.Tex. 1971); *aff'd with modifications*, 447 F.2d

441 (5th Cir. 1971); *stay denied sub nom., Edgar v. United States,* 404 U.S. 1206, 92 S.Ct. 8, 30 L.Ed.2d 10 (1971); *cert. denied,* 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972). Basically, that suit was instituted by the federal government to ensure that the elementary and secondary public school systems of Texas would not be operated or administered in a racially discriminatory manner. *United States v. Texas,* 321 F.Supp. at 1045.

The defendants in *United States v. Texas* were the TEA and specific independent school districts, county boards of education and county superintendents. The narrow question of that case involved the validity of the continued operation of nine segregated (all black) school districts in Texas. (321 F.Supp. at 1045.) The broader question of that suit involved a claim that the State of Texas, through the TEA, had failed to assure all children in Texas equal educational opportunities and equal access to educational programs supported by federal funds. *Id.*

After a trial upon the merits in *United States v. Texas,* the United States District Court for the Eastern District of Texas (Eastern District) found, with respect to the broader question involved there, that Texas had created and supported a dual system of education based upon race in violation of the Constitution. (321 F.Supp. at 1052.) The court, accordingly, entered orders on November 24, 1970, and April 20, 1971, which were designed to remedy such unlawful conduct.

Apart from the relief directed to the particular school districts involved there, Part B of the Eastern District's order of April 20, 1971, imposed certain general obligations upon the TEA with respect to the continuing operation and administration of public elementary and secondary schools within the state. Such obligations were imposed because TEA is the chief supervisory body for education in the state and, furthermore, acts as the primary distributor of federal assistance to school districts throughout the state. (321 F.Supp. at 1056.)

Part B of the Eastern District's April 20, 1971 order was directed to proposed changes in the boundaries for any school district in the state. (447 F.2d at 443–44.) Part B(1) of the order prohibited TEA from allowing any changes to be made in school district boundary lines "whether by detachment, annexation, or consolidation of districts in whole or in part" which are intended, or in fact, "create, maintain, reinforce, renew, or encourage a dual school system based on race, color, or national origin." (*Id.*)

The TEA was also required to obtain notice of all proposed boundary changes of school district lines, investigate the effects of the proposed changes on the desegregation of the school districts concerned, promptly notify the appropriate county and local officials involved of the investigation's findings, and indicate whether the transfer of territory "is in violation of the law." (*Id.*) The Eastern District retained jurisdiction of that case for all purposes, including the entry of further orders to enforce or modify the initial decree. (447 F.2d at 449.)

After the Eastern District entered its orders in *United States v. Texas,* WHISD requested the TEA to abolish its school district and consolidate that area with some adjacent school district. WHISD's request was denied by the TEA.

WHISD then moved the Eastern District for leave to intervene in *United States v. Texas* on November 1, 1972. WHISD's complaint in intervention alleged that the federal government and the City of Dallas, Texas caused WHISD to become a segregated, one-race system (all black) by constructing subsidized housing in Dallas, in general, and in that part of Dallas which lies within the boundaries of WHISD, in specific.

The Eastern District entered two orders with respect to WHISD's motion to intervene. First, WHISD's motion to intervene was granted. Second, WHISD's claim in intervention was severed from the main action (*United States v. Texas, supra*) and transferred to this Court.

This Court heard three days of testimony on WHISD's complaint in intervention and entered an order on July 24, 1973, which dismissed the complaint on the merits, based on (1) WHISD's lack of standing, (2) the Court's lack of equitable power to grant the relief requested by WHISD, and (3) WHISD's failure to follow state statutory procedures for the abolition of school districts. *United States v. Texas,* CA 3–6541–C (N.D.Tex.1973).

Subsequent to the dismissal of WHISD's complaint in intervention, the Cities of Wilmer, Texas and Hutchins, Texas held elections pursuant to state law to determine whether they could acquire exclusive control of the school facilities located within their corporate boundaries for the purpose of operating municipal school districts independent of WHISD. By a majority vote both cities elected to acquire control over those educational facilities and operate separate school districts.

In June, 1974, both cities informed the TEA that they had created separate municipal school districts pursuant to the procedures authorized by the Texas Education Code. Acting under the direction of the April 20, 1971, order previously entered by the Eastern District in *United States v. Texas, supra,* the TEA conducted an investigation of the racial impact upon WHISD by the proposed detachment of the Cities of Wilmer and Hutchins from WHISD.

In essence, TEA found that the proposed changes would have an adverse racial impact upon WHISD. The TEA informed both cities of the results of the investigation and, furthermore, advised them that such action was in violation of the orders entered by the Eastern District of Texas in *United States v. Texas.* In spite of the communications forwarded by the TEA and the protests of WHISD, the Cities of Wilmer and Hutchins proceeded to take physical possession of the schools located within their boundaries for the purpose of registering students and operating municipal school districts separate from WHISD.

In response to the attempts by the Cities of Wilmer and Hutchins to operate separate school districts, WHISD filed a second motion to intervene with the Eastern District in *United States v. Texas* and moved for interlocutory relief. The motion to intervene was granted based upon the Eastern District's continued retention of jurisdiction to enforce its earlier orders.

After a hearing on WHISD's motion for a preliminary injunction was held where evidence and testimony were adduced, the Eastern District concluded that the effect of the proposed acts of both cities would have increased the minority enrollment of WHISD and such acts, therefore, were "wholly in violation of" the Court's previous order and would have caused irreparable injury to WHISD.[1]

Accordingly, the Eastern District entered a preliminary injunction on August 9, 1974, which enjoined the Cities of Wilmer and Hutchins, and all persons acting in concert with them, from:

(1) Occupying, threatening or attempting to occupy any school facility within WHISD.

(2) Registering or threatening to register any student within WHISD for attendance at a public school sponsored by either city.

(3) Carving out a new school district from WHISD.

The City of Wilmer took an appeal to the Fifth Circuit from the preliminary injunction. Holding that the cities' "attempt to create splinter school districts in the circumstances here related flies in the face of" prior Supreme Court decisions foreclosing such conduct, and would "create 'a refuge for white students of the [WHISD] system'", the Fifth Circuit affirmed the Eastern District's decision. *United States v. Texas,* 508 F.2d 98, 99–100 (5th Cir. 1975) (citations omitted). WHISD's second claim in intervention against both cities is currently pending before the Eastern District and that Court's preliminary injunction of

1. The Eastern District's findings and conclusions are not reported but are described in the Fifth Circuit's opinion in *United States v. Texas,* 508 F.2d 98, 99–100 (5th Cir. 1975).

August 9, 1974, is still in effect. A hearing on a permanent injunction has been set by the Eastern District for August 16, 1976. This setting followed the Eastern District's denial of the motion of the defendant-intervenors, City of Wilmer and City of Hutchins, to sever the WHISD's second claim in intervention from *United States v. Texas* and to transfer it to this Court for consolidation with this case.

## B. *The Instant Case*

Plaintiffs contend that defendants have engaged in discriminatory acts in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The WHISD defendants are alleged to have maintained a segregated school system. The remaining defendants are alleged to have abetted, compounded or supported the unlawful conduct of the WHISD defendants.

The principal mode of relief requested by plaintiffs is the detachment of that portion of WHISD which lies within the corporate limits of Dallas, Texas. The detached territory would then, under plaintiffs' request, be annexed to DISD.

Based upon the investigation conducted by the TEA in 1974, the relief requested by plaintiffs would have had the effect of transferring over 86% (4641 students) of WHISD's enrollment to DISD, an overwhelming majority of whom were black or Mexican-American.

■ An analysis of plaintiffs' complaint and the relief which they request, coupled with an understanding of the background of this case, expose plaintiffs' case as an effort to relitigate issues already decided by the Eastern District and by this Court in its July 24, 1973, decision. With regard to issues previously determined, the plaintiffs are clearly barred in their attempt to relitigate here by the doctrines of res judicata and collateral estoppel.

The Cities of Wilmer and Hutchins were parties to the prior proceedings and remain parties in the suit in the Eastern District. Although several individuals have joined the Cities in this suit, the issues are identical to ones previously raised. The allegations contained in the complaint in this case have been considered in the previous litigation, and the end sought to be achieved—the creation of a smaller district than the present WHISD—is precisely the same. Not only are the issues the same, but the representation of the Cities in the previous litigation has been by the law firm who presently represents all the plaintiffs here.

■ Moreover, if this Court were to grant the requested relief, it would have the effect of contravening the orders of a court of equal dignity. As stated by the Eastern District in its most recent order denying severance, the filing of the instant case here

> could be viewed as an effort to circumvent the effect of this court's [Eastern District's] August 9, 1974, injunction, by seeking similar relief before another tribunal.

*United States v. Texas,* CA–5281 (Order entered July 15, 1976).

Finally, any action by this Court would constitute an interference with the continuing jurisdiction of the Eastern District. The issues which are involved here are pending in the Eastern District, and indeed, a hearing on a permanent injunction has been set for August. The relief requested by the plaintiffs should have been filed as a counterclaim in the suit pending there, not as an independent suit filed in this Court.

As the Fifth Circuit has stated,

> Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment. *Mitchell v. Village Creek Drainage Dist.,* 8th Cir. 1946, 158 F.2d 475, 478.

*Miller v. Meinhard-Commercial Corporation,* 462 F.2d 358 (5th Cir. 1972).

This Court now has jurisdiction of a presently pending school desegregation suit against DISD, being Cause No. CA–3–4211–C, styled '*Eddie Mitchell Tasby, et al, vs. Dr. Nolan Estes, et al,*' on the docket of this Court.

"Nothing contained in this Memorandum Opinion and Order is to be construed as relinquishing that jurisdiction to any other judicial district court or judge thereof. Nothing contained in this Memorandum Opinion and Order is to be construed as directing or permitting the DISD, or any of the 'DISD Defendants', to be made a party to Cause No. 5281, styled *'United States v. Texas,'* pending in the United States District Court for the Eastern District of Texas.

"Such intent of this Court is consistent with the intent and language of the United States Court of Appeals for the Fifth Circuit in *United States v. State of Texas,* 447 F.2d 441, at p. 442, stay denied sub nom., *Edgar v. United States,* 404 U.S. 1206, [92 S.Ct. 8, 30 L.Ed.2d 10] (1971); cert. denied, 404 U.S. 1016, [92 S.Ct. 675, 30 L.Ed.2d 663] (1972), reading as follows:

'7. Because of the interdistrict operation of the Order in this case, this Court directs that the Order of April 20, 1971, shall include the following paragraph:

"Nothing herein shall be deemed to affect the jurisdiction of any other district court with respect to any presently pending or future school desegregation suits." '

"Such intent of this Court is also consistent with the previous Order judicially noticed by the Court entered by the Honorable William Wayne Justice in said Cause No. 5281, styled *'United States v. Texas,'* in the United States District Court for the Eastern District of Texas, on November 24, 1972, which reads in part as follows:

'Furthermore, this Court is mindful of the modification of the Court of Appeals of this court's order of November 24, 1970, which provides that:

"Nothing herein shall be deemed to affect the jurisdiction of any other district court with respect to any presently pending or future school desegregation suits." 447 F.2d 441, 442 (5th Cir. 1971).

'Accordingly, it is

\*    \*    \*    \*    \*    \*

'ORDERED that the severed cause of action be, and it is hereby, TRANSFERRED to the Dallas Division of the Northern District of Texas.'

"which severance and transfer Order resulted in the hearings and Order referred to on p. 5 above in the proceedings before this Court in *United States v. Texas,* No. CA–3–6541–C, on the docket of this Court."

Because this case represents an attempt to relitigate issues previously decided, and constitutes a collateral attack on the preliminary injunction entered by the Eastern District, and because the granting of any relief by this Court would constitute an interference with the proper jurisdiction of the Eastern District, this case must be dismissed. Accordingly, it is therefore

ORDERED, ADJUDGED and DECREED that the above-styled and numbered cause be and hereby is dismissed with prejudice to refiling same.