**In re Grand Jury Investigation of Frank P. BALISTRIERI, Joseph P. Balistrieri, John J. Balistrieri.**

**No. 80 Misc. 43.**

United States District Court, E. D. Wisconsin.

Dec. 15, 1980.

Joan F. Kessler, U. S. Atty., Milwaukee, Wis., for United States.

Stephen M. Glynn, Shellow & Shellow, Milwaukee, Wis., for petitioners.

## MEMORANDUM AND ORDER

WARREN, District Judge.

The petitioners, Frank P. Balistrieri, Joseph P. Balistrieri and John J. Balistrieri, have filed a motion seeking a sequestered *voir dire* of the grand jury before which the "Balistrieri investigation" is being conducted. In addition, movants suggest that the Court conduct its own inquiry into the circumstances surrounding the release of certain sealed affidavits on file with this Court.

■ On August 5, 1980, the *Chicago Tribune* and the *Milwaukee Journal* carried two similar stories linking Frank P. Balistrieri with the murder of two underworld characters. The stories attributed the information to an affidavit of Special Agent J. Michael DeMarco of the Federal Bureau of Investigation (FBI) on file with this Court. According to the *Chicago Tribune*, it received a copy of this affidavit from the Chicago Crime Commission, a private organization. Movants contend that these articles, as well as other articles in the *Milwaukee Sentinel*, have biased the grand jury against them. Furthermore, they assert that this Court should conduct an inquiry to determine whether the release of the sealed affidavit was a deliberate attempt to influence the grand jury.

The grand jury has a long and honored history in this country. The Supreme Court in *United States v. Calandra*, 414 U.S. 338, 342–43, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), best summarized its traditional function.

The institution of the grand jury is deeply rooted in Anglo-American history. In England, the grand jury served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action. In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a

presentment or indictment of a Grand Jury.' *Cf. Costello v. United States*, 350 U.S. 359, 361–362, [76 S.Ct. 406, 408, 100 L.Ed.2d 397] (1956). The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions. *Branzburg v. Hayes*, 408 U.S. 665, 686–687 [92 S.Ct. 46, 2658–2659, 33 L.Ed.2d 626] (1972).

Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair v. United States*, 250 U.S. 273, 282 [39 S.Ct. 468, 471, 63 L.Ed. 979] (1919).

In recent years, the courts have been confronted with increasing demands that they inject themselves into the workings of a grand jury. These requests have often taken the form of motions to *voir dire* the grand jury regarding prejudice or biases or motions to instruct the grand jury. These motions have uniformly met with no success. *See United States v. Sweig*, 316 F.Supp. 1148, 1153 (S.D.N.Y.1976) (cases cited therein); *United States v. Roethe*, 418 F.Supp. 1118 (E.D.Wis.1976); *In re Grand Jury Investigation of Frank Tenanova, et al.*, 80 Mis. 37 (Gordon, J.) (E.D.Wis. Aug. 26, 1980).

While *dicta* in a number of cases from the United States Supreme Court indicated that a person may have the right to an unbiased grand jury, the Court has expressly declined to find such a right under the Fifth Amendment. *Compare Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) and *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) *with Beck v. Washington*, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). Perhaps the most succinct statement of the law is that of Judge Hollzaff in *United States v. Knowles*, 147 F.Supp. 19, 21 (D.D.C.1957).

> Challenges for bias, or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors. No provision is made for preemptory challenges of grand jurors and no such challenges are permitted. Likewise no *voir dire* examination exists in respect to grand jurors.

Support for this interpretation is also found in Congress' failure to provide for challenges to grand jurors for bias in Rule 6 of the Federal Rules of Civil Procedure. Therefore, in light of the foregoing, the Court finds that petitioners' motion to *voir dire* the grand jurors must be and is hereby denied.

Even assuming the existence of some right to an unbiased grand jury, petitioners' motion would be denied because they have not demonstrated any actual prejudice resulting from the newspaper articles. *See United States v. Garrison*, 353 F.Supp. 306 (E.D.La.1972); *United States v. Sweig*, 316 F.Supp. at 1153; *Estes v. United States*, 335 F.2d 609 (5th Cir. 1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965); *United States v. Roethe*, 418 F.Supp. 118; *Beck v. United States*, 298 F.2d 622 (9th Cir. 1962), *cert. denied*, 370 U.S. 919, 82 S.Ct. 1558, 8 L.Ed.2d 499 (1962). The Court realizes that petitioners are in a difficult position because they are unable to uncover any evidence of actual prejudice without a *voir dire* of the grand jury. In such cases, some courts have deemed it appropriate to review the grand jury transcripts *in camera. See United States v. Fuentes*, 432 F.2d 405 (5th Cir. 1970); *Beck v. United States*, 298 F.2d 622; *United*

*States v. Caesar*, 368 F.Supp. 328 (E.D.Wis. 1973). In this instance, the Court will decline at this time to review any grand jury transcripts because the Court finds it would be premature to do so. No indictment of any sort has been handed down by the grand jury against these petitioners. To review the on–going proceedings of the grand jury would both delay its proceedings and constitute an unwarranted intrusion into the grand jury process. If the petitioners are indicted by the grand jury, then they may choose to renew their motion. At that time, the reviewing court can, if it chooses to review the entire proceeding, determine if any prejudice existed or if it had any effect on the grand jury's proceedings. The Court, however, finds little will be gained by doing so now.

■ Petitioners' second motion seeks a Court inquiry into the release of the sealed affidavit of Agent DeMarco. Attached to the government's brief is an affidavit of Joan Kessler, United States Attorney for the Eastern District of Wisconsin. In this affidavit, she asserts that an attorney employed by the Department of Justice with the Chicago Strike Force inadvertently and unintentionally caused the distribution of the sealed affidavit to the Chicago Crime Commission which apparently released it to the *Chicago Tribune.*

■ Petitioners appear to contend that there is sufficient evidence of prosecutorial misconduct to require that the Court conduct an investigation. Alternatively, they argue that the evidence suggest that someone has violated the Court's sealing order and may be liable for contempt. Petitioners raise two very serious issues. The grand jury is an independent body and should not be subject to undue influence by the prosecutor assisting it. The independence of the grand jury system requires that no branch of government be able to hold it captive. *See United States v. Samango,* 607 F.2d 877 (9th Cir. 1979).

In numerous instances, without reaching the constitutional issues, the courts have exercised their supervisory powers over the grand jury and prosecutor to dismiss indict-ments where there is evidence of prosecutorial misconduct affecting the grand jury's deliberations. *See United States v. Samango,* 607 F.2d at 882; *Silverthorne v. United States,* 400 F.2d 627, 633–34 (9th Cir. 1968); *United States v. Nunan,* 236 F.2d 576, 593 (2d Cir. 1956); *United States v. Sweig,* 316 F.Supp. at 1152, 1155. In *Sweig,* the court was faced with less compelling evidence of governmental release of prejudicial publicity before indictment, but granted defendant leave to renew his motion after any conviction. At that time, the court opined that it would be more appropriate for a full review of the grand jury transcript and the making of a full record of the government's action.

The Court did not empanel the grand jury involved here. Further, in this instance, where there has been no indictment as of yet, the Court declines to hold any hearing on the potential of prosecutorial misconduct. The trial judge faced with an actual indictment may exercise his discretion to determine whether to pursue the allegation beyond the affidavit of the United States Attorney.

The matter of whether there has been a violation of this Court's sealing order is solely addressed to this Court. In that regard, the Court cannot and will not ignore a possible violation of its orders. Justice requires that the Court deal equally with members of the other branches of government as it would deal with private citizens. Therefore, at the appropriate time, this Court will hold a hearing to determine whether there has been a violation of its order. This hearing, however, will be postponed at least until the completion of the grand jury's proceeding so as not to create any further publicity regarding this matter.

Finally, although the Court has denied the petitioner's motions, the government should in no way interpret this as a sanction of its actions. Even if the documents were inadvertently released as stated by the government's counsel, their disclosure is inexcusable. It remains to be seen what effect, if any, the disclosure will have but, in any case, it should sensitize the govern-

ment to the need to maintain the secrecy and integrity of the grand jury. Procedures which permit the inadvertent release of such sealed documents should be changed.

In summary, petitioner's motion for *voir dire* of the grand jury must be and is hereby denied. Petitioner's motion for a Court-conducted investigation into the release of the affidavits is also denied at this time. The Court will, however, at a time it deems appropriate, conduct its own investigation into the circumstances surrounding the release of the DeMarco affidavit.